IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 2, 2008

Charles R. Fulbruge III
Clerk

No. 06-41785

XL SPECIALTY INSURANCE CO.

Plaintiff-Appellant

v.

KIEWIT OFFSHORE SERVICES, LTD.;

Defendant-Appellee

RBT WELDERS, INC.

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before KING, GARZA, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

This appeal is from a declaratory judgment ruling that the plaintiff insurance company had a duty to defend and indemnify the defendant general contractor in an underlying state wrongful death suit. It involves the application of Texas's express negligence rule to an indemnity contract between a general contractor, the indemnitee, and a sub-contractor, the indemnitor. Applying Texas precedent, we conclude that the language in the indemnity provision satisfied the requirement that the contract must unambiguously state a party's intent to indemnify the indemnitee for all liability caused by the

indemnitee's own future negligence. Additionally, we reject the challenge to the reasonableness of the settlement. We affirm.

I.     BACKGROUND

Defendant-Appellee Kiewit Offshore Services (Kiewit) was the general contractor performing welding services on the Skyway Bridge San Francisco Bay Project. Kiewit entered into a subcontract with Defendant-Appellant R.B.T. Welders, Inc. (RBT). Pursuant to this contract, RBT provided welders to Kiewit to work on the project at Kiewit's facility in Ingleside, Texas.

On January 6, 2003, at the facility, Mann Nguyen, an employee of RBT, entered a confined space, which resembled a large steel box, to perform a weld repair. The gas in the steel box ignited, and the resulting explosion blew off the roof. Nguyen, who was conscious after the explosion, suffered third degree burns over sixty-five percent of his body. He was transported to the Brooks Army Medical Center and died one week later. Ernesto Moreno, a Kiewit employee, had been standing on the roof at the time of the explosion and was killed instantly.

The families of Moreno and Nguyen brought suit against Kiewit and RBT in Texas state court, alleging that Kiewit and RBT were negligent for operating the Ingleside Plant without implementing an adequate safety program for welding in confined spaces. At the time of the explosion, RBT had the following insurance policies: (1) an excess liability policy through XL Specialty Insurance Company (the Plaintiff-Appellant in the instant declaratory judgment action); (2) a commercial general liability insurance policy from Atlantic Insurance Company; (3) and a worker's compensation policy through American Interstate Insurance Company. After receiving service, Kiewit demanded that XL Specialty defend and indemnify Kiewit as an additional insured. XL Specialty refused, and Atlantic tendered a defense.

RBT settled with the Moreno family for four million dollars and the Nguyen family for one million dollars. Kiewit subsequently began negotiating with the Nguyen family. During this time, Kiewit's counsel prepared a report analyzing Kiewit's potential liability to the Nguyen family. The report was prepared based on Kiewit's internal investigation and initial discovery in the underlying suit.

The evidence demonstrated that Kiewit was hired to construct bridge footings, a type of project that Kiewit had not previously undertaken. Kiewit usually worked on offshore platforms. Unlike offshore platforms, the welding on bridge footings had to be done in an enclosed space. Kiewit's safety officer had no experience working on structures like bridge footings. Kiewit had no provision for ventilating the enclosed space during welding. Although Kiewit provided fans for welders in the enclosed spaces, these fans did not have "explosive proof" switches and were not placed fully outside the enclosed space when in use.

Kiewit's counsel concluded that the operating procedures created a foreseeable risk of an explosion and that such procedures did not adequately protect the employees from the hazards of welding in enclosed spaces. The report concluded that Kiewit was potentially liable to the Nguyen family for: (1) failing to properly execute the confined space entry permit system; (2) failing to implement a proper confined space ventilation system; and (3) providing a ventilation fan that potentially was the ignition source for the explosion. It also estimated that Nguyen's survival damages for the week in the hospital suffering third-degree burns could be twenty million dollars, with perhaps fifty to sixty percent of the fault attributed to Kiewit. Because Kiewit owned the facility, the report stated the percentage of fault could be higher.

Kiewit, using RBT's settlement with the Moreno family as a guidepost, settled with the Nguyen claimants for four million dollars. Subsequent to the

3

settlements, XL Specialty filed a declaratory judgment action in federal district court, seeking a judgment that it had no duty to defend or indemnify Kiewit for Kiewit's settlement with the Nguyen claimants because Kiewit was not an additional insured under the XL Specialty policy. Kiewit filed a third-party claim against RBT and a cross-claim against XL Specialty, asserting that RBT had a duty to defend and indemnify Kiewit under the indemnification provision in the RBT/Kiewit subcontract. Kiewit further asserted that the XL Specialty policy provided coverage for RBT's liability under the indemnification provision.

The district court granted summary judgment, holding that RBT had contracted to indemnify Kiewit for Kiewit's negligence with respect to the explosion, and the XL Specialty policy provided coverage for RBT's contractual duty to indemnify. RBT and XL Specialty now appeal.

## II.     ANALYSIS

### A.     Standard of Review

This Court reviews a district court's grant of summary judgment de novo, applying the same standards as the district court. E.g., Hirras v. Nat'l R.R. Passenger Corp., 95 F.3d 396, 399 (5th Cir. 1996). Summary judgment is proper if the record reflects "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

### B.     Express Negligence Rule

Appellants RBT and XL Specialty contend that the district court erred in finding that the indemnity provision at issue expressly provided that RBT would indemnify Kiewit for Kiewit's own negligence. Appellants argue that the indemnity clause did not satisfy the express negligence rule. Texas's express negligence rule is a "rule of contract interpretation that applies specifically to agreements to indemnify another party for the consequences of that party's own

negligence." *Quorum Health Serv. v. Maverick County Hospital District*, 308 F.3d 451, 458 (5th Cir. 2002). Under this rule, "contracting parties seeking to indemnify one party from the consequences of its own negligence must express that intent in specific terms, within the four corners of the document." Id. (citing *Ethyl Corp. v. Daniel Const. Co.*, 725 S.W.2d 705, 707-08 (Tex. 1987)). The Texas Supreme Court adopted this stringent rule because indemnification of a party for the consequences of that party's negligence was an "extraordinary shifting of risk." Id. at 458-59. Whether an indemnity provision satisfies the express negligence rule is a question of law for the court to determine. Id. at 459.

The instant indemnification provision reads as follows:

> To the fullest extent permitted by law, Subcontractor [RBT] specifically obligates itself to Contractor [Kiewit], Contractor's partners, individually, and all Kiewit companies (defined as any company or business entity in which Peter Kiewit Sons, Inc. directly or indirectly holds a controlling interest). Contractor's surety, Owner and any other party required to be indemnified under the Prime Contract, jointly and severally, (hereinafter "Contractor Indemnified Parties") in the following respects, to-wit:
>
> .     .     .     .
>
> (b)  TO DEFEND AND INDEMNIFY THEM AGAINST AND SAVE THEM HARMLESS FROM ANY AND ALL CLAIMS, SUITS OR LIABILITY FOR DAMAGES TO PROPERTY, INCLUDING LOSS OF USE THEREOF, INJURIES TO PERSONS, INCLUDING DEATH, AND FROM ANY OTHER CLAIMS, SUITS OR LIABILITY ON ACCOUNT OF ACTS OR OMISSIONS OF SUBCONTRACTOR, OR ANY OF ITS SUBCONTRACTORS, SUPPLIERS, OFFICERS, AGENTS, EMPLOYEES OR SERVANTS, WHETHER OR NOT CAUSED IN PART BY THE ACTIVE OR PASSIVE NEGLIGENCE OR OTHER FAULT OF A CONTRACTOR INDEMNIFIED PARTY; PROVIDED HOWEVER SUBCONTRACTOR'S DUTY HEREUNDER SHALL NOT ARISE IF SUCH CLAIMS, SUITS OR LIABILITY, INJURIES OR DEATH OR OTHER CLAIMS OR SUITS ARE CAUSED BY THE SOLE NEGLIGENCE OF CONTRACTOR, UNLESS OTHERWISE PROVIDED IN THE PRIME CONTRACT. SUBCONTRACTOR'S OBLIGATION HEREUNDER SHALL NOT BE LIMITED BY THE

PROVISIONS OF ANY WORKERS' COMPENSATION ACT OR SIMILAR STATUTE.

(emphasis added).

Texas precedent persuades us that this language would satisfy the express negligence rule. In Payne & Keller, Inc., v. P.P.G. Industries, Inc., the Texas Supreme Court held that similar language expressed the parties' clear intent that Payne & Keller would indemnify P.P.G. for P.P.G.'s own concurrent negligence:

> By its terms, the Payne & Keller/P.P.G. contract required Payne & Keller to indemnify P.P.G. for work-related claims "arising out of . . . the acts or omissions . . . of [Payne & Keller] or its . . . employees . . . in the performance of the work . . . irrespective of whether [P.P.G.] was concurrently negligent . . . but excepting where the injury or death . . . was caused by the sole negligence of [P.P.G.]."

793 S.W.2d 956, 957 (Tex. 1990) (brackets and ellipsis in opinion).

Although the wording in the instant provision is not identical to the language in the above case, the key language is quite similar. In this case, as previously set forth, the indemnity clause provides that RBT will indemnify Kiewit "on account of" the acts or omissions of RBT regardless of whether such acts were caused in part by the negligence of Kiewet. With respect to the contract provision in the cited case, the principal, relevant difference is that instead of "on account of," that contract provision uses the phrase "arising out of." Accordingly, as the appellants admit in their reply brief, the crux of the issue is whether the instant phrase "on account of" is synonymous with the phrase "arising out of," which was used in the Texas case finding that the express negligence rule was satisfied.

There is language indicating that the phrases are synonymous. In Joe Adams & Son v. McCann Construction Company, the Texas Supreme Court interchangeably used these similar phrases. 475 S.W.2d 721 (Tex. 1971). In

that case, the indemnity clause provided that the contractor would indemnify the owner for damages "through or on account of any act or in connection with the contractor." 475 S.W.2d at 723 (emphasis added).[1] While analyzing the indemnity clause, the court paraphrased the language and stated that "it purports to afford protection against liability arising from . . . any default or omission . . . ." Id. at 725 (emphasis added). We are persuaded that the Texas Supreme Court would find "on account of" to be interchangeable with the phrase "arising from." Thus, we conclude that the instant indemnity clause satisfies the fair notice requirement of the express negligence rule.

Nonetheless, we address Appellants' remaining arguments. Relying on Fisk Elec. Co. v. Constructor & Assoc., Inc., Appellants point to other language in the instant provision that is very similar to language the Texas Supreme Court has held did not satisfy the express negligence rule. 888 S.W.2d 813 (Tex. 1994). In Fisk, "the contract contained the following indemnity clause: '[t]o the fullest extent permitted by law, [Fisk] shall indemnify, hold harmless, and defend [Constructors] ... from and against all claims, damages, losses, and expenses, including but not limited to attorney's fees ...' arising out of or resulting from the performance of Fisk's work." Id. at 814. Appellants correctly state that the instant indemnity provision contains similar language that does not, by itself, satisfy the express negligence rule. Nonetheless, Fisk is distinguishable because it does not contain the additional language providing that RBT would indemnify Kiewit regardless of whether Kiewit was negligent.

---

[1] It should be noted that in Joe Adam & Son, the indemnity provision was found insufficient because, unlike the instant case, it did not contain the additional language that the subcontractor would indemnify the contractor regardless of whether the damages were in part based on the contractor's own negligence. Id. It should also be noted that Joe Adam & Son involved applying the "clear and unequivocal" test that was later replaced with the express negligence rule. Ethyl Corp., 725 S.W.2d 705. We do not find that troubling because we are relying on the court using the two relevant phrases interchangeably, not the court's application of the clear and unequivocal test.

Appellants also rely on precedent holding that "contracts defining what is included in an indemnity obligation by stating what is excluded fail the rule's requirements."  Quorum, 308 F.3d at 462 (citing Singleton v. Crown Cent. Petroleum Corp., 729 S.W.2d 690 (Tex. 1987)).  Stated another way, if the only language indicating coverage is exclusionary, the only way to find coverage would be implied.  By definition, implied coverage does not satisfy the express negligence rule. In this case, although the indemnity provision does exclude indemnity for damages when the contractor is solely responsible, this exclusionary language does not provide coverage.  Instead, the language that satisfies the rule is the language that the subcontractor will indemnify the contractor "ON ACCOUNT OF ACTS OR OMISSIONS OF SUBCONTRACTOR . . . WHETHER OR NOT CAUSED IN PART BY THE ACTIVE OR PASSIVE NEGLIGENCE OR OTHER FAULT OF A CONTRACTOR."  As previously discussed, this inclusionary language demonstrates the parties' intent that the subcontractor will indemnify the contractor regardless of whether the contractor is partially responsible.

In sum, the district court properly granted summary judgment finding that the indemnity provision satisfied the express negligence rule.

### C.    Sole or Gross Negligence

Appellants argue that the case should be remanded for a trial to determine whether Kiewit was solely or grossly negligent because the indemnity clause expressly precludes indemnity if Kiewit was solely or grossly negligent.  It is clear that the indemnity clause excludes claims based on Kiewit's sole or gross negligence.  The district court found these arguments waived because neither argument was raised as an affirmative defense in their pleadings.[2]  On appeal,

---

[2]   The district court relied on Rule 8(c) of the Federal Rules of Civil Procedure to find the arguments waived.  In a diversity case, the "Federal Rules of Civil Procedure provide the

Appellants have failed to challenge the district court's finding of waiver. Thus, we are precluded from reaching the arguments. Even assuming arguendo that the district court erred in finding waiver, Appellants point to no evidence in their brief showing that there is a genuine issue of material fact with respect to whether Kiewit was solely or grossly negligent. Thus, Appellants, who had the burden of pleading and proving these affirmative defenses,[3] have failed to show that the district court erred in finding that they did not satisfy their burden.

### D.    Reasonableness of Settlement

Appellants argue that the district court erred in ruling that Kiewit's $4 million settlement with the Nguyens was reasonable and prudent. "Under Texas law, where an indemnitee enters into a settlement with a third party, it may recover from the indemnitor only upon a showing that potential liability existed, and that the settlement was reasonable, prudent, and in good faith under the circumstances." Insurance Co. of North America v. Aberdeen Ins. Services, 253 F.3d 878, 888 (5th Cir. 2001) (citing Transamerica Ins. v. Avenell, 66 F.3d 715, 721 n.15 (5th Cir. 1995)). Further, "[t]he settling indemnitee need not prove actual liability to the third party before recovering from the indemnitor." Id.

Appellants' argument is very narrow. Appellants admit that "Kiewit faced potential liability to the Nguyen plaintiffs." There is no allegation of bad faith. Thus, the only question is whether the $4 million settlement was reasonable and prudent. Appellants do not dispute that the Nguyen claimants suffered $4 million in damages. Indeed, in district court, although RBT admitted "that from

---

manner and time in which defenses are raised and when waiver occurs." Arismendez v. Nightingale Home Health Care, 493 F.3d 602, 610 (5th Cir. 2007) (citation and internal quotation marks omitted).

[3]    Delta Engineering Corp. v. Warren Petroleum, 668 S.W.2d 770, 772-73 (Tex.App.–Houston [1st Dist.] 1984, writ ref'd n.r.e.).

Kiewit's perspective the settlement was reasonable," RBT incorrectly argued that the reasonableness of the settlement should be determined from indemnitor's perspective. XL Specialty Ins. Co. v. Kiewit Offshore Serv., 426 F.Supp.2d 565, 577 n.11 (S.D.Tex. 2006 ). As the district court explained, the Texas Supreme Court has held that the indemnitee must "establish that from its standpoint the settlement was made in good faith and was reasonable and prudent under the circumstances." Mitchell's, Inc. v. Friedman, 157 Tex. 424, 431, 303 S.W.2d 775 (Tex. 1957) (emphasis added); Accord Aerospatiale Helicopter Corp. v. Universal Health Services, Inc., 778 S.W.2d 492, 500 (Tex.App.-Dallas 1989, writ denied) (citing Pan American Gas Co. v. Natural Gas Const. Corp., 418 S.W.2d 380, 381 (Tex.Civ.App.-Waco, 1967 writ ref'd n.r.e.)). Thus, RBT has effectively conceded the reasonableness of the $4 million settlement. Assuming that XL Specialty is not bound by this concession, we address the remaining arguments.

Appellants argue that the "opportunity for Kiewit to prevail" on either the borrowed servant defense or the statutory employer defense "lowered the settlement value of the claim." In other words, Appellants contend that these defenses should have been used as bargaining tools to reduce the value of the settlement. Kiewit responds that this argument is being raised for the first time on appeal. An argument not raised before the district court cannot be asserted for the first time on appeal. Stokes v. Emerson Elec. Co., 217 F.3d 353, 358 n.19 (5th Cir. 2000). To preserve an argument, it "must be raised to such a degree that the trial court may rule on it." Matter of Fairchild Aircraft Corp., 6 F.3d 1119, 1128 (5th Cir. 1993).

Appellants assert that the reasonableness of the settlement was contested in light of the two defenses available. However, our review of the briefing before the district court reveals that Appellants argued the two defenses rendered Kiewit immune from suit. Thus, Appellants argued Kiewit should not have

agreed to a settlement. We have not found (and Appellants have not shown us) an argument before the district court that the amount of the settlement was unreasonable based on the availability of the above cited two defenses. We believe those arguments are distinct and conclude that the reasonableness of the amount of the settlement in light of the two defenses was not sufficiently raised. Indeed, as the district court noted, "[i]n light of Nguyen's third-degree burns, XL and RBT's counsel admitted at the hearing on Kiewit's motion that if Kiewit was found liable, a judgment of at least four million dollars against Kiewit was likely." XL Specialty Ins., 426 F.Supp.2d at 577. Under these circumstances, it does not appear that the particular issue was sufficiently raised such that the district may have ruled on it.

Even assuming the argument was sufficiently raised, we find it offers Appellants no succor. As previously indicated, Appellants contend that the amount was not reasonable "in light of two good legal defenses which Kiewit could–and should–have developed." Contrary to Appellants' assertions, Kiewit did investigate these possible defenses. In the court below, Kiewit provided the affidavits of in-house counsel and pre-settlement outside counsel. Additionally, as set forth previously, Kiewit's counsel prepared a report analyzing the potential liability to the Nguyens. With respect to the worker's compensation and borrowed servant defenses, both law firms retained by Kiewit advised that the defenses would "probably not immunize Kiewit from suit."

The bottom line is that Appellant RBT first settled with its employee (Moreno) for $4 million, and Kiewit, using that settlement as a guidepost, likewise settled with its employee (Nguyen) for $4 million. Additionally, RBT settled with Nguyen for $1 million. In light of Kiewit's undisputed potential liability, and the evidence indicating that Kiewit considered the possible defenses, we find that the $4 million settlement was prudent and reasonable from Kiewit's perspective. Appellants have failed to establish a genuine issue

11

of material fact with respect to the reasonableness of Kiewit's settlement with the Nguyens.

Accordingly, the judgment of the district court is AFFIRMED.