# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 11, 2014

No. 12-41243

Lyle W. Cayce
Clerk

NCDR, L.L.C.; DENTISTRY OF BROWNSVILLE, P.C., doing business as
Kool Smiles; KS2 TX, P.C.,

Plaintiffs–Appellees

v.

MAUZE & BAGBY, P.L.L.C.; GEORGE WATTS MAUZE, II; JAMES
THOMAS BAGBY, III,

Defendants–Appellants

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, KING, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

## I.  INTRODUCTION

Defendant–Appellant M&B[1], a Texas law firm, engaged in an advertising
campaign to solicit former dental patients from Kool Smiles[2] dental clinics as
potential clients.  M&B appeals the district court's denial of its Texas "anti-

---

[1] The Defendants–Appellants consist of two Texas lawyers (George Watts Mauzé II and
James Thomas Bagby III) and their law firm (Mauzé & Bagby, P.L.L.C.).  They are collectively
referred to as "M&B."

[2] Plaintiff–Appellees own dental clinics in Texas and around the country. They are
NCDR, L.L.C.; Dentistry of Brownsville, P.C. d/b/a Kool Smiles; and KS2 TX, P.C. d/b/a/ Kool
Smiles. They are collectively referred to as "Kool Smiles."

No. 12-41243

SLAPP" motion to dismiss a claim brought against them by Plaintiff–Appellee Kool Smiles. The district court determined that M&B's speech fell within a commercial speech exemption to Texas's anti-SLAPP statute—the Texas Citizen's Participation Act ("TCPA"). While M&B challenges that determination and asks this Court to render judgment in its favor, Kool Smiles challenges this court's jurisdiction and argues that the Texas statute at issue does not apply in federal court.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background

Kool Smiles runs a national chain of dental clinics that provide care primarily to economically disadvantaged children. M&B is a Texas law firm that engaged in an advertising campaign soliciting former Kool Smiles patients to represent. M&B contends that Kool Smiles has been the subject of multiple media reports and government investigations regarding allegations of Medicaid fraud and bad medical provision. As part of the campaign, M&B ran television, radio, and internet advertisements, and developed a website that strongly implied, or even accused, Kool Smiles of performing unnecessary, and at times harmful, dental work on children to obtain government reimbursements.

### B.    Procedural Background

Based on M&B's ads and website, Kool Smiles brought causes of action under federal law for trademark infringement, false advertising, and cyber-piracy under the Lanham Act. Kool Smiles also brought state claims for defamation, business disparagement, injury to business reputation, and trade name and service mark dissolution.

No. 12-41243

M&B brought several motions to dismiss.  One was brought pursuant to the TCPA.  *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001–27.011 (West 2011). The TCPA is an anti-SLAPP[3] statute that allows a claim to be dismissed when the defendant can show that the claim was brought to chill the exercise of First Amendment rights.  *Id.* § 27.003(a); *see also infra* Part II.C.  M&B also brought motions to dismiss pursuant to Federal Rule of Civil Procedure ("FRCP") 8(a) for failure to plead with sufficient particularity and FRCP 12(b)(6) for failure to state a claim on which relief may be granted.

The district court's order contained four holdings.  First, the court held that the TCPA does not apply to Kool Smiles's three federal claims brought under the Lanham Act.  Second, the court held that the TCPA does not protect M&B's speech because its advertisements and website fall into the "commercial speech" excemption to the TCPA.  Third, Kool Smiles's pleadings were sufficient such that M&B's FRCP 8(a) motion failed.  Fourth, Kool Smiles stated a claim, such that M&B's FRCP 12(b)(6) motion failed.

M&B brought this appeal.  M&B does not appeal the district court's rulings on its motions to dismiss based on FRCP 8(a) or FRCP 12.  Thus, M&B only seeks interlocutory review of the denial of its TCPA motion.  As to this TCPA appeal, M&B does not appeal the district court's first ruling regarding Kool Smiles's federal causes of action.  Instead, M&B's only argument on appeal is that the district court erred in concluding that M&B's speech fell into the "commercial speech" exemption such that the anti-SLAPP motion to dismiss was not available.  However, Kool Smiles, in their brief, raises other issues on appeal, discussed below.

---

[3] SLAPP is an acronym for "strategic litigation against public participation."

## C.    The Statute at Issue: The TCPA

The purpose of the TCPA is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code Ann. § 27.002. To achieve this, the TCPA provides a means for a defendant, early in the lawsuit, to seek dismissal of certain claims in the lawsuit. *See id.* § 27.003.

If a legal action is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association, that party may file a motion to dismiss the legal action. *Id.* § 27.003(a). The motion to dismiss generally must be filed no later than sixty days after service of the legal action, although the TCPA provides that a court can extend the filing deadline on a showing of good cause. *Id.* § 27.003(b). On the filing of a motion to dismiss pursuant to § 27.003(a), all discovery in the legal action is suspended until the court has ruled on the motion to dismiss, except as provided by § 27.006(b). *Id.* § 27.003(c). Section 27.006(b) states, "[o]n a motion by a party or on the court's own motion and on a showing of good cause, the court may allow specified and limited discovery relevant to the motion." *Id.* § 27.006(b).

Section 27.005, entitled "Ruling," sets out the burden shifting scheme:

(a) The court must rule on a motion under Section 27.003 not later than the 30th day following the date of the hearing on the motion.

(b) Except as provided by Subsection (c), on the motion of a party under Section 27.003, a court *shall* dismiss a legal action against the moving party if the moving party shows by a preponderance of

No. 12-41243

the evidence that the legal action is based on, relates to, or is in response to the party's exercise of:

> (1) the right of free speech;
> (2) the right to petition; or
> (3) the right of association.

*Id.* § 27.005(a)–(b) (emphasis added). However, the motion to dismiss may not be granted "if the party bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c).

"In determining whether a legal action should be dismissed under [the TCPA], the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* § 27.006(a).

The Section entitled "Appeal" provides:

(a) If a court does not rule on a motion to dismiss under Section 27.003 in the time prescribed by Section 27.005, the motion is considered to have been denied by operation of law and the moving party may appeal.

(b) An appellate court shall expedite an appeal or other writ, whether interlocutory or not, from a trial court order on a motion to dismiss a legal action under Section 27.003 or from a trial court's failure to rule on that motion in the time prescribed by Section 27.005.

(c) An appeal or other writ under this section must be filed on or before the 60th day after the date the trial court's order is signed or the time prescribed by Section 27.005 expires, as applicable.

*Id.* § 27.008.[4]

## III.  DISCUSSION

### A.    Jurisdiction

Because the district court's order denying the motion to dismiss was not a final judgment resolving all the issues of the suit, we must first determine whether this court has jurisdiction.  M&B invokes the collateral order doctrine as a basis for jurisdiction before this court.  Kool Smiles argues that this court lacks jurisdiction over this interlocutory appeal because it does not fall within the "independent, immunity-style right" that the collateral order doctrine recognizes as immediately appealable.  We disagree.

Where the district court's order is not a final judgment ending the action, the collateral order doctrine can confer limited appellate jurisdiction.  *Will v. Hallock*, 546 U.S. 345, 349 (2006).  The following three conditions must be met for a collateral order appeal: (1) the order must conclusively determine the disputed question; (2) it must resolve an important issue completely separate from the merits of the case; and (3) it must be effectively unreviewable on appeal from a final judgment.  *Id.*

In *Henry v. Lake Charles American Press*, 566 F.3d 164 (5th Cir. 2009), this Court analyzed a district court's denial of a motion to dismiss pursuant to Louisiana's anti-SLAPP statute, Article 971, under the main requirements of the collateral order doctrine: (1) conclusivity, (2) separability, and (3) unreviewability.[5]  566 F.3d at 171–78.  Before so doing, the court noted that

---

[4] The legislature amended several subsections of the TCPA in 2013.  The statutes as cited within are from the TCPA as applicable at the time of the suit.

[5] *Henry* also treats the importance of an issue as a fourth, separate requirement.  566 F.3d at 178–79. However, it not clear whether importance is a fourth requirement or is instead wrapped up in the second and third requirements.  *See, e.g.*, *Mohawk Indus., Inc. v. Carpenter*,

No. 12-41243

determining whether an order is appealable should be done not on a case-by-case basis, but on a type-of-order-by-type-of-order basis. *Id*. at 173. "Thus, for our present purposes, we do not look to whether the order in the context of this particular case is immediately appealable, but to whether orders denying motions brought under anti-SLAPP statutes such as [Louisiana's] satisfy the conditions of the collateral order doctrine." *Id*. The court ultimately held that "a district court's denial of a motion brought under an anti-SLAPP statute such as [Louisiana's] is an immediately-appealable collateral order," such that this Court had jurisdiction over the appeal. *Id*. at 181.

Whether a denial of a motion to dismiss pursuant to the TCPA is immediately reviewable under the collateral order doctrine is an issue of first impression. Although *Henry* used broad language ("statutes *such as Article 971* satisfy the conditions of the collateral order doctrine"), because Texas's anti-SLAPP statute is not identical to Louisiana's, this Court conducts its own collateral order doctrine inquiry to determine whether the denial of an anti-SLAPP motion to dismiss satisfies the three requirements of the collateral order doctrine. All three must be satisfied for the Ccourt to have jurisdiction. Below, the three requirements are evaluated against the TCPA. Because we hold that the TCPA satisfies all three requirements, the collateral order doctrine supplies jurisdiction.

1. Does the district court's order conclusively determine the disputed question?

The requirement that the district court's order "conclusively determine"

---

558 U.S. 100, 107 (2009) (specifying that the second condition requires important questions separate from the merits and that the third requirement—reviewability—cannot be answered without making a judgment about the importance of the right that would be lost).

the disputed question means that the order must be final as to only the one inquiry that the order determines. *See Behrens v. Pelletier*, 516 U.S. 299, 307–08 (1996) ("Whether or not a later summary judgment motion is granted, denial of a motion to dismiss is conclusive as to [the right to avoid the burden of litigation.]"). To be considered "conclusive," it should be "unlikely that the district court will revisit the order." *Henry*, 566 F.3d at 174 (citing 15A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3911, at 333 (2d ed. 1992)).

Because the TCPA and Louisiana's anti-SLAPP statute are similar on this point, *Henry*'s analysis on conclusivity applies with equal force here: "A district court's denial of [a TCPA] motion is conclusive as to whether [the TCPA] mandates dismissal of the suit. . . . If a trial court denies [a TCPA] motion, then the case proceeds as it normally would. There is also no indication that a trial court would revisit [its earlier TCPA decision]." *See Henry*, 566 F.3d at 174. Thus, the district court's order denying TCPA relief is conclusive for purposes of the collateral order doctrine.

2. Does the district court's order resolve an important issue separate from the merits of the case?

In order for an issue to be immediately appealed, it must be separate from the merits of the case. Issues are not separate "where they are but steps towards [a] final judgment in which they will merge." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). The question of separability turns on whether the matter at issue "is significantly different from the fact-related legal issues that likely underlie the plaintiff's claim on the merits." *Johnson v. Jones*, 515 U.S. 304, 314 (1995). The Supreme Court has described "separate" issues as those that are "conceptually distinct from the merits of the plaintiff's claim."

No. 12-41243

*Id.* (citations and internal quotation marks omitted).   For example, issues concerning immunity from suit are often separate from the underlying dispute in the litigation.  *Henry*, 566 F.3d at 174.  Claims of qualified immunity are distinct from the merits of a plaintiff's claim.  *Id.* (citing *Mitchell v. Forsyth*, 472 U.S. 511, 527–28 (1985)).   The *Henry* court conceded that the fact that determining an anti-SLAPP motion can require the district court to assess the merits of the plaintiff's claim weighed against a finding of separability.  *Id.* at 175.   It went on to hold, however, that because the anti-SLAPP statute had a distinct purpose from that of the underlying suit, separability was still present. *Id.*  An anti-SLAPP motion "resolves a question separate from the merits in that it merely finds that such merits may exist, without evaluating whether the plaintiff's claim is to succeed."  *Id.* (citing *Batzel v. Smith*, 333 F.3d 1018, 1025 (9th Cir. 2003) (internal quotation marks omitted)).  Further, although an anti-SLAPP motion "looks to the plaintiff's probability of success, the court decides it before proceeding to trial and then moves on.  Immediate appellate review would thus determine an issue separate from any issues that remain before the district court."  *Id.* at 176.

Separability under the TCPA is even clearer than separability under the Louisiana statute because Louisiana's statute relies in part on an analysis of the merits of the underlying claim.  Louisiana's statue specifies that if the defendant meets his burden under the statute to show that the plaintiff's suit is in connection with the defendant's right to free speech, the suit is dismissed unless the plaintiff can establish "a probability of success on the claim."  *Henry*, 556 F.3d at 170 (citing La. Code Civ. Proc. Ann. art. 971(A)(3)).  By contrast, the TCPA does not require so searching a review into the plaintiff's probability of success.   Instead, a plaintiff can defeat an anti-SLAPP motion if he merely

establishes a prima facie case for each element of the claim. Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c). Thus, the TCPA "has a purpose distinct from that of the underlying suit." *See Henry*, 566 F.3d at 175. More directly, "an anti-SLAPP motion 'resolves a question separate from the merits in that it merely finds that such merits may exist, without evaluating whether the plaintiff's claim will succeed.'" *Id.* (quoting *Batzel*, 333 F.3d at 1025). As explained in *Henry*, "'[t]he purpose of an anti-SLAPP motion is to determine whether the defendant is being forced to defend against a meritless claim,' not to determine whether the defendant actually committed the relevant tort." *Id.* (quoting *Batzel*, 333 F.3d at 1025). In sum, the denial of a motion to dismiss brought pursuant to the TCPA resolves an important issue separate from the merits of the case, satisfying the collateral order doctrine's separability requirement.

> 3. Is the district court's order effectively unreviewable on appeal from a final judgment?

For the collateral order doctrine to apply, the district court's order must be effectively unreviewable on appeal. "Perhaps the embodiment of unreviewability, then, is immunity from suit . . . ." *Henry*, 566 F.3d at 177. In determining whether a right confers immunity, the critical inquiry is whether the statute provides a right not to stand trial in the first place and to otherwise avoid the burdens of litigation. *Mitchell v. Forsyth*, 472 U.S. 511, 525–26 (1985). If an essential part of the defendant's claim is the right to avoid the burden of trial, then this final requirement of the collateral order doctrine is met because obtaining relief after trial is too late. *Id.* at 525. In *Henry*, the court held that the denial of a Louisiana anti-SLAPP motion satisfied the unreviewability requirement. 566 F.3d at 178. ("[The statute] thus provides a right not to stand trial, as avoiding the costs of trial is the very purpose of the statute.").

No. 12-41243

The TCPA's own provisions for interlocutory review are instructive. To be sure, state law does not control the question of whether appellate review is available in federal court. *See, e.g.*, *Englert v. MacDonnell*, 551 F.3d 1099, 1107 (9th Cir. 2009) ("We emphasize that our brief discussion of the availability of mandamus in Oregon is not intended to suggest that Oregon law determines the availability of appellate review here. On the contrary, federal law is controlling on this issue."). However, numerous courts have recognized that the absence or presence of interlocutory statutory review mechanisms at the state level informs the question of whether interlocutory appeal is permissible in federal courts. *See Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 151 (2d Cir. 2013); *DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1015–16 (9th Cir. 2013); *Metabolic Research, Inc. v. Ferrell*, 693 F.3d 795, 800–01 (9th Cir. 2012); *Godin v. Schencks*, 629 F.3d 79, 85 (1st Cir. 2010); *Englert*, 551 F.3d at 1105–06; *Batzel*, 333 F.3d at 1025. This "is relevant not because state law determines the availability of appellate review [in federal court]—it does not—but rather because [it demonstrates whether] 'lawmakers wanted to protect speakers from the trial itself rather than merely from liability.'" *Godin*, 629 F.3d at 85 (quoting *Batzel*, 333 F.3d at 1025).

Thus, in *Batzel*, the court found "instructive that California's anti-SLAPP statute provide[d] that an order denying an anti-SLAPP motion may be appealed immediately." 333 F.3d at 1025. This, along with that statute's legislative history, evidenced "that California lawmakers wanted to protect speakers from the trial itself rather than merely from liability." *Id.* The court continued by explaining that, "[i]f the defendant were required to wait until final judgment to appeal the denial of a meritorious anti-SLAPP motion, a decision by this court reversing the district court's denial of the motion would not remedy the fact that

the defendant had been compelled to defend against a meritless claim brought to chill rights of free expression." *Id.* Accordingly, the court concluded that "a defendant's rights under the anti-SLAPP statute are in the nature of immunity: They protect the defendant from the burdens of trial, not merely from ultimate judgments of liability." *Id.*; *see also Godin*, 629 F.3d at 85 (citing *Englert*, 551 F.3d at 1107, with approval for the proposition that "whether [a] state anti-SLAPP statute provides for interlocutory appeals is significant to whether interlocutory appeals should be permitted in federal courts").

Equally instructive on the importance of an expedited state appeal process is the analysis undertaken by the *Englert* and *Metabolic Research* courts—apparently the only two federal courts to have concluded that orders denying motions to dismiss anti-SLAPP suits are *not* immediately appealable under the collateral order doctrine. In *Englert*, the Ninth Circuit held that Oregon's anti-SLAPP statute "was not intended to provide a right not to be tried." 551 F.3d at 1105. In reaching this conclusion, the court reasoned that "the failure of the Oregon anti-SLAPP statute to provide for an appeal from an order denying a special motion to strike . . . surely suggests that Oregon does not view such a remedy as necessary to protect the considerations underlying its anti-SLAPP statute." *Id.* The court continued that:

> The failure of the Oregon Legislature to provide for an appeal from the denial of a special motion to strike provides compelling evidence that, unlike their California counterparts, Oregon lawmakers did not want to protect speakers from the trial itself, as much as they wanted to have in place a process by which a *nisi prius* judge would promptly review the evidence underlying the defamation complaint to determine whether it had sufficient merit to go forward.

*Id.* at 1106 (citation and internal quotations marks omitted). *Englert* emphasized that this distinguished the case from *Batzel* which had "held that,

No. 12-41243

if a legislature provided an appeal unique to its anti-SLAPP statute . . . it could be inferred that its purpose was to confer immunity from suit—an immunity which can only be vindicated by permitting an interlocutory appeal." *Id.* at 1107.

The *Metabolic Research* court reached the same conclusion in connection with Nevada's anti-SLAPP statute. 693 F.3d at 801. There, the court held that its review of Nevada's law led it to the conclusion that the statute's "underlying values and purpose [were] satisfied without resort to an immediate appeal because, unlike California's, it [did] not furnish its citizens with immunity from trial." *Id.* Underlying this holding were the court's observations that "Nevada's anti-SLAPP statute [did] not expressly provide for an immediate right to appeal," and that the statute explicitly indicated that its purpose was to provide defendants immunity from "*civil liability*" as opposed to immunity from suit or trial. *Id.* at 802. Accordingly, like the *Englert* court, the *Metabolic Research* court concluded that a motion to dismiss under Nevada's anti-SLAPP statute did not satisfy the third prong of the collateral order doctrine.

With respect to the right to an immediate appeal, the TCPA is more similar to the statutes at issue in *Batzel* and *Godin* than those considered in *Englert* and *Metabolic Research*. Section 27.008 of the TCPA provides that "[a]n appellate court shall expedite an appeal or other writ, whether interlocutory or not, from a trial court order on a motion to dismiss a legal action under Section 27.003 or from a trial court's failure to rule on that motion in the time prescribed by Section 27.005." Tex. Civ. Prac. & Rem. Code Ann. § 27.008(b). Consistent with *Batzel*, *Godin*, *Englert*, and *Metabolic Life*, it appears that, by providing this right, the Texas legislature has indicated the nature of the underlying right the TCPA seeks to protect. That right is not simply the right to avoid ultimate liability in a SLAPP case, but rather is the right to avoid trial in the first

13

instance. Thus, "[b]ecause the anti-SLAPP motion is designed to protect the defendant from having to litigate meritless cases aimed at chilling First Amendment expression, the district court's denial of an anti-SLAPP motion would effectively be unreviewable on appeal from a final judgment." *Batzel*, 333 F.3d at 1025.

We also note that this conclusion is consistent with the Supreme Court's most recent pronouncements on the collateral order doctrine. In *Will*, for example, the Court explained that immediate review must advance "some particular value of a high order." 546 U.S. at 352. "That is, it is not mere avoidance of a trial, but avoidance of a trial that would imperil a substantial public interest, that counts when asking whether an order is effectively unreviewable if review is to be left until later." *Id.* at 353 (citation and internal quotation marks omitted). As the *Metabolic Research* court explained, "[a] legislatively approved immunity from trial, as opposed to a mere claim of a right not to be tried, is imbued with a significant public interest." 693 F.3d at 800; *see also Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 879 (1994) ("When a policy is embodied in a constitutional or statutory provision entitling a party to immunity from suit (a rare form of protection), there is little room for the judiciary to gainsay its 'importance.'"). Likewise, "[i]t would be difficult to find a value of a 'high[er] order' than the constitutionally-protected rights to free speech and petition that are at the heart of [an] anti-SLAPP statute. Such constitutional rights deserve particular solicitude within the framework of the collateral order doctrine." *DC Comics*, 706 F.3d at 1015–16 (second alteration in original). Thus, we hold that this Court has jurisdiction to interlocutorily consider the denial of a TCPA anti-SLAPP motion to dismiss.

No. 12-41243

**B.     The TCPA's Applicability in Federal Court**

Kool Smiles argues on appeal that the TCPA does not apply in federal court because it conflicts with both FRCP 12(d) and Federal Rule of Appellate Procedure ("FRAP") 4.  M&B argues that Kool Smiles did not raise this specific argument before the district court and thus it is waived.     We agree.

As a general rule, "[a]n argument not raised before the district court cannot be asserted for the first time on appeal." *XL Speciality Ins. Co. V. Kiewit Offshore Servs., Ltd.* 513 F.3d 146, 153 (5th Cir. 2008).  Merely mentioning a legal issue in general terms is also insufficient; an argument must be "raised to such a degree that the trial court may rule on it."  *Id.* (quotation marks and citation omitted).  In the district court, in its response brief in opposition to M&B's motion to dismiss, Kool Smiles argued only that the TCPA conflicted with FRCP 8, 9, and 12.  The rules raised before the district court differ from those before us (FRCP 12(d) and FRAP 4).

Before this court, Kool Smiles argues that FRCP 12(d) and FRAP 4 conflict with the TCPA.  This was not the question raised before the district court.  To begin, we note that Kool Smiles never claimed in district court that FRAP 4 conflicted with the TCPA. And while Kool Smiles raised FRCP 12, its discussion in district court was brief and only generally mentions motions to dismiss.  Kool Smiles' argument largely focused on the pleading standards articulated in FRCP 8 and 9.  Moreover, before the district court, Kool Smiles did not specifically address FRCP 12(d).   And yet, an analysis of whether a state law or rule conflicts with federal procedural rules requires a precise discussion of the specific federal rule at issue (as well as the allegedly conflicting state law or rule).  Consequently, the district court's order did not address these rules.  By

15

No. 12-41243

not "rais[ing the issue] to such a degree that the trial court may rule on it," Kool Smiles waived its FRCP 12(d) and FRAP 4 arguments.

Because Kool Smiles waived its argument that the TCPA is a procedural law that conflicts with the Federal Rules of Civil Procedure, we proceed assuming that it does not.  Thus, we continue by reviewing the district court's determination that the TCPA's commercial speech exemption applies to the speech underlying this lawsuit.

## C.    Commercial Speech Exemption

The district court ruled that the TCPA does not protect M&B's conduct because its speech falls within the "commercial speech" exemption to the TCPA. It found that M&B is primarily engaged in selling legal services to clients and that the ads offered those services to potential customers (i.e., clients).  M&B's main argument is that the district court incorrectly interpreted the "commercial speech" exemption.  Kool Smiles replies that the plain language of the statute exempts M&B's speech from the protections offered by the TCPA.

The "commercial speech" exemption to the TCPA, enacted in June 2011, states that the TCPA:

> [D]oes not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

Tex. Civ. Prac. & Rem. Code Ann. § 27.010(b).  This Court reviews a district court's interpretation of a state statute de novo, interpreting the state statute the way the state supreme court would, based on prior precedent, legislation, and relevant commentary. *F.D.I.C. v. Shaid*, 142 F.3d 260, 261 (5th Cir. 1998).

16

No. 12-41243

"When construing a state statute absent explicit state-court guidance, we must attempt to predict state law, not to create or modify it." *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 381 (5th Cir. 2013) (citation and internal quotation marks omitted).

The Supreme Court of Texas has not yet interpreted the TCPA, much less the "commercial speech" exemption. When the parties filed their briefs, no Texas state court or federal court had interpreted the exemption. In 2013, four[6] intermediate Texas state court cases analyzing the exemption were released. Two address whether a defendant's action "arises out of the sale or lease of goods, services, or an insurance product." The other two address whether the intended audience is "an actual or potential buyer or customer."

The first, *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, No. 01-12-00581-CV, 2013 WL 5761051, at *1 (Tex. App.—Houston [1st Dist.] Oct. 24, 2013, no pet.), involved a defamation case arising from a series of articles in a newspaper. The articles reported regulatory compliance problems and investigations into the Crazy Water Retirement Hotel ["the Hotel"]—an assisted living facility—and its owner. *Id.* at *1–*2. Specifically, the paper published a summary of its own article stating, in part: "Month after month in 2010 complaints from residents and employees at the Crazy Water Retirement Hotel kept city and state inspectors returning to the building, investigating complaints of unsafe conditions, building disrepair, failure to provide services and verbal abuse of residents." *Id.* at *1.

---

[6] A fifth case mentions the commercial speech exemption, but does not discuss it. *Whisenhunt v. Lippincott*, No. 06-13-00051-CV, 2013 WL 553968, at *4 n.5 (Tex. App.—Texarkana Oct. 9, 2013, pet. filed) ("Because we conclude that the statute does not apply, we need not decide whether the commercial speech exception applies in this case.").

No. 12-41243

The Hotel and its owner brought several state law claims against the newspaper and its source, alleging that the paper published defamatory and damaging statements. *Id.* at *4. The defendants moved to dismiss the suit under the TCPA. *Id.* The trial court denied the motion. *Id.* at *5. The defendants appealed. *Id.* at *1. The Hotel contended that the paper was a corporation primarily engaged in the business of selling or leasing goods or services, and as a result, the TCPA's provision for "commercial speech" exempted the paper from protection. *Id.* at *14.

The court of appeals relied on precedent from the California Supreme Court as a guide for the issue of first impression. *Id.* (citing *Simpson Strong–Tie Co., Inc. v. Gore*, 230 P.3d 1117 (Cal. 2010)). California's anti-SLAPP statute's commercial speech exemption is similar, but not identical, to Texas's. *See id.* at *14. The Texas court borrowed the four-prong analysis that the California Supreme Court devised. *Id.* at *14–*15. To determine whether the exemption applies, courts should examine whether:

> (1) the cause of action is against a person primarily engaged in the business of selling or leasing goods or services;
>
> (2) the cause of action arises from a statement or conduct by that person consisting of representations of fact about that person's or a business competitor's business operations, goods, or services;
>
> (3) the statement or conduct was made either for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services or in the course of delivering the person's goods or services; and
>
> (4) the intended audience for the statement or conduct [is an actual or potential buyer or customer].

No. 12-41243

*Id.* (alteration in original) (citing *Simpson*, 230 P.3d at 1129). The court also adopted *Simpson*'s determination that the statute put the burden of proving that the commercial speech exemption applies on the party asserting it. *Id.* at \*15. As to the four prongs, the court stated it was undisputed that the newspaper was in the business of reporting community events. *Id.* But, the court went on, the stories the Hotel complained of did not arise out of the sale of the goods and services that the newspaper sells—newspapers. *Id.* Thus, the exemption did not apply to remove the TCPA's protection from the newspaper. *Id.* at \*16.[7]

Because the Supreme Court of Texas has not yet interpreted the TCPA, we must make an *Erie* guess. *See Truong*, 717 F.3d at 381 ("When construing a state statute absent explicit state-court guidance, we must attempt to predict state law, not to create or modify it." (citation and internal quotation marks omitted)). Applying the *Crazy Hotel* analysis to the present case, the language in M&B's ads and website arose directly from the solicitation of the services it provides. The solicitation of a service or good is inherent in the sale of the service. Otherwise, there would be a mostly arbitrary distinction created. For example, statements made while fixing a customer's roof would be exempted, but statements made while convincing a customer to hire the roofer to fix the roof would not.

As cited above, for the commercial speech exemption to apply, the intended audience must be an actual or potential buyer or customer. The two other Texas intermediate state court cases addressing the commercial speech exemption

---

[7] The second intermediate Texas state case addressing whether a defendant's conduct arose from "sale or lease of goods, services, or an insurance product," Tex. Civ. Prac. & Rem. Code Ann. § 27.010(b), determined that a letter to a parole board from a client's attorney did not. *Pena v. Perel*, No. 08-12-00275-CV, 2013 WL 4604261, at \*3 (Tex. App.—El Paso Aug. 28, 2013, no pet.).

dealt with the audience provision. Both concerned businesses upset with the ratings they received from the Better Business Bureau ("BBB"). *Better Bus. Bureau of Metro. Dallas, Inc. v. BH DFW, Inc*. 402 S.W.3d 299, 303–04 (Tex. App.—Dallas 2013, pet. filed)*; Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc*., No. 01–12–00990–CV, 2013 WL 3716693, at *1–*2 (Tex. App.—Houston [1st Dist.] July 16, 2013, pet. filed). Both held that the commercial speech exemption did not apply—so the BBB's speech was protected by the TCPA—because the BBB's intended audience was not an actual or potential buyer or customer, as required by the exemption. *BH DFW*, 402 S.W.3d at 309; *John Moore Servs.,* 2013 WL 3716693, at *5; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.010(b). The BBB sells its accrediting services to businesses; the actual and potential buyers or customers of the BBB's membership service are the accredited businesses, not the general public. *BH DFW,* 402 S.W.2d at 302. Because the intended audience of the business review was the general public, not a business customer seeking accreditation, the commercial speech exemption did not apply. *Id*. at 309. By contrast, M&B's intended audience is its potential customers—potential legal clients.

M&B argues that the California Supreme Court, interpreting a "similarly-worded exemption," held that the exemption "did not exempt attorney advertisements from the protections of the Anti-SLAPP law." But M&B neglects the fact that the California Supreme Court's holding rested on a clause in the California statute that is not present in Texas's anti-SLAPP statute. California's statute's commercial speech exemption requires that the speech "consists of representations of fact about that person's or a business competitor's business operations, goods, or services." Cal. Civ. Proc. Code § 425.17(c)(1). The California high court held that an attorney advertisement soliciting clients was

not such a representation of fact about his business operations, goods, or services, and thus was not within the commercial speech exemption. *Simpson*, 230 P.3d at 1129. Texas's commercial speech exemption contains no such limitation, making *Simpson*'s holding inapplicable. Ultimately, we conclude that the Supreme Court of Texas would most likely hold that M&B's ads and other client solicitation are exempted from the TCPA's protection because M&B's speech arose from the sale of services where the intended audience was an actual or potential customer. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.010(b).

## IV. CONCLUSION

For the reasons above, we AFFIRM the district court.