Brian Quinn, Chief Justice
The trial court denied the motion of Timothy Castleman and Castleman Consulting, LLC (Castleman) to dismiss the defamation suit filed against them by Internet Money Limited d/b/a The Offline Assistant and Kevin O'Connor (collectively referred to as Offline). Castleman thought itself entitled to such relief per the terms of the "Texas Citizens Participation Act" (TCPA). TEX. CIV. PRAC. & REM. CODE ANN. § 27.01 et seq. (West 2015). We affirm.
Background
According to the limited record before us, the dispute arose from a commercial or business relationship between Castleman and Offline. The former retained the latter to help order and deliver products sold over the Castleman website. Allegedly, Offline failed to properly comply with instructions from Castleman about how to perform its tasks, which deviations purportedly resulted in Castleman experiencing lost profits. Offline responded by alleging that it had followed the instructions provided it.
Eventually, Castleman posted on the internet comments about Offline's performance. For instance, it titled one of its blogs "Warning: Stay Away From The Offline Assistant Company & Kevin O'Connor" and wrote about the business relationship between the two, how he mentored O'Connor, how he "help[ed] [O'Connor] grow his business," and the controversy arising therefrom. That blog also contained allegations that 1) "[n]o one from [O'Connor's] company ... reviewed any of the orders to ensure they were being done correctly despite his assurances they do quality control and project management on all jobs," 2) "[t]here was an 85% error rate by his staff in ordering products for us," 3) O'Connor "doesn't stand behind his employees['] work," and 4) Offline "has zero quality control or checks to ensure work is being done correctly." Through other internet avenues, Castleman stated that 1) his "goal [was] to protect other business owners from losing $8k or having to take a company to court like [he's] doing," and 2)
*684 "[t]he fallout for this is going to be maybe 10 or 100 multiples of what this guy owes me, and none of it had to happen."
Offline deemed the comments defamatory, demanded their removal, and requested damages. So too did it sue Castleman when the latter refused Offline's demands.
Upon answering the petition, Castleman invoked the provisions of the TCPA and moved to dismiss the suit. According to Castleman, Tim Castleman had "the right to speak his mind on the behavior of companies and individuals with whom he [did] business. He has done so, and [Offline is] now trying to make him pay for it. But Castleman's statements [weren't] defamatory; they [fell] within no exception to the liberty of free speech that would allow a reasonable person to find them defamatory." Furthermore, the "Texas Citizens Participation Act" purportedly "protect[ed] him from [Offline's] attempts to impose upon him the cost of defending such a lawsuit."
The trial court denied the motion to dismiss and issued findings of facts and conclusions of law supporting its decision. Among other things, it determined that 1) "[t]he statements at issue arose out of the sale of goods, and the intended audience is actual or potential buyers or customers," 2) Castleman's "statements were made with either the knowledge of their falsity or, at the very least, with reckless disregard as to their truth or falsity," 3) Castleman "admitted their intent to harm [Offline] and acknowledged the damage their statements were causing [Offline]," 4) Castleman failed to prove that "the legal action was based on, related to, or was in response to [Castleman's] exercise of the right of free speech, the right to petition, or of the right of association," 5) "Defendant Castleman Consulting, LLC did not file a motion to dismiss under the Texas Citizens Participation Act," only Tim Castleman," and 6) Castleman's "acts fall within an exception to the Citizens Participation Act." Castleman appealed.
Disposition
The sole issue before us concerns whether the trial court properly denied the motion to dismiss. We overrule the issue.
The TCPA requires the dismissal of suits that impinge on certain First Amendment rights. Greer v. Abraham , 489 S.W.3d 440, 441 (Tex. 2016). The rights within its scope are those pertaining to free speech, to petition, and of association. TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a). Yet, the Act "does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of ... a commercial transaction in which the intended audience is an actual or potential buyer or customer." Id. § 27.010(b). Offline contended that the circumstances underlying its suit fall within this exemption. The trial court agreed, as illustrated by its statements that the "statements at issue arose out of the sale of goods, and the intended audience is actual or potential buyers or customers," and Castleman's "acts fall within an exception to the Citizens Participation Act."
Before us, though, Castleman posits that the decision is "nonsense" since "[t]he commercial-speech exception denies the Act's protection to misstatements about the products or services of a company or its competitors in an attempt to win business for the speaker ." (Emphasis added). It was not attempting to win business for itself, according to Castleman, when uttering the purported falsehoods at bar. Rather, he was attempting to warn prospective customers of Offline about Offline's supposed business capabilities and shortcomings. And, to support the contention, he cited multiple opinions rendered by various *685 Texas intermediate appellate courts and a federal trial court. See, e.g. , Epperson v. Mueller , No. 01-15-00231-CV, 2016 WL 4253978, 2016 Tex. App. LEXIS 8671 (Tex. App.-Houston [1st Dist.] Aug. 11, 2016, no pet.) (mem. op.); Backes v. Misko , 486 S.W.3d 7 (Tex. App.-Dallas 2015, pet. denied) ; Whisenhunt v. Lippincott , 474 S.W.3d 30 (Tex. App.-Texarkana 2015, no pet.) ; Hicks v. Grp. & Pension Adm'rs, Inc. , 473 S.W.3d 518 (Tex. App.-Corpus Christi-Edinburg 2015, no pet) ; Kinney v. BCG Attorney Search, Inc. , No. 03-12-00579-CV, 2014 WL 1432012, 2014 Tex. App. LEXIS 3998 (Tex. App.-Austin Apr. 11, 2014, pet. denied) (mem. op.); Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd. , 416 S.W.3d 71 (Tex. App.-Houston [1st Dist.] 2013, pet. denied) ; NCDR, L.L.C. v. Mauze & Bagby , P.L.L.C., 745 F.3d 742 (5th Cir. 2014) ; Lamons Gasket Co. v. Flexitallic, L.P. , 9 F.Supp.3d 709 (S.D. Tex. 2014).
No doubt, cited authorities say what Castleman says they say, and it would be quite easy to simply accept that. Yet, one of those opinions caught our attention and caused us to hesitate. The opinion of which we speak is NCDR . Issued by the United States Court of Appeals for the Fifth Circuit, it too dealt with the commercial speech exemption of the TCPA. Apparently, Mauze & Bagby had posited that "the California Supreme Court, interpreting a 'similarly-worded exemption,' held that the exemption 'did not exempt attorney advertisements from the protections of the Anti-SLAPP law.' " NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C. , 745 F.3d at 755. The reviewing court rejected the argument, though, because M & B "neglect[ed] the fact that the California Supreme Court's holding rested on a clause in the California statute that is not present in Texas's anti-SLAPP statute." Id. "Texas's commercial speech exemption contains no such limitation...." Id. This observation about the difference between the Texas statute and California statute piqued our curiosity. This was so since the California Supreme Court opinion alluded to, i.e. Simpson Strong-Tie Co., Inc. v. Gore , 49 Cal. 4th 12, 109 Cal.Rptr.3d 329, 230 P.3d 1117 (Cal. 2010), was the very same California Supreme Court opinion relied upon by the court in Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd . More importantly, it was Newspaper Holdings that Backes , Whisenhunt , Hicks , Kinney and the others cited to hold as they did.
As mentioned, the Newspaper Holdings panel looked to Simpson Strong-Tie for guidance in applying the Texas commercial speech exemption. In doing so, it noted that the California Court "devised a four-prong analysis." Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd. , 416 S.W.3d at 88-89. The prongs to be examined were whether: 1) the cause of action was against a person primarily engaged in the business of selling or leasing goods or services; 2) the cause arose from a statement or conduct by that person consisting of representations of fact about that person's or a business competitor's business operations, goods, or services; 3) "the statement or conduct was made either for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services or in the course of delivering the person's goods or services"; and 4) "the intended audience for the statement or conduct [is an actual or potential buyer or customer]." Id. (emphasis added). It further quoted the California statute in play, i.e. § 425.17(c) of the California Code of Civil Procedure. According to § 425.17(c), the California Anti-SLAPP Law
does not apply to any cause of action brought against a person primarily engaged in the business of selling or leasing *686 goods or services, including, but not limited to, insurance, securities, or financial instruments, arising from any statement or conduct by that person if both of the following conditions exist:
(1) The statement or conduct consists of representations of fact about that person's or a business competitor's business operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services , or the statement or conduct was made in the course of delivering the person's goods or services.
(2) The intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer, or the statement or conduct arose out of or within the context of a regulatory approval process, proceeding, or investigation, except where the statement or conduct was made by a telephone corporation in the course of a proceeding before the California Public Utilities Commission and is the subject of a lawsuit brought by a competitor, notwithstanding that the conduct or statement concerns an important public issue.
CAL. CODE CIV. PROC. § 425.17(c) (emphasis added). And, it was the italicized wording upon which the court in Newspaper Holdings apparently relied in concluding that the Texas Anti-SLAPP law applied to the circumstances before it. As said by the court, "[a]lthough the Hotel's residents may have learned about Patterson's statements and complaints through reading the newspaper, she did not direct the complained-of comments to them to secure the sale of goods or services."[1] Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd. , 416 S.W.3d at 89-90.
By comparison, the commercial speech exemption within the TCPA is much shorter than that of California. Again, it says that the Texas Anti-SLAPP statute "does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer." TEX. CIV. PRAC. REM. CODE ANN. § 27.010(b). Omitted from that verbiage is any mention of the statement being made or conduct being undertaken "for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's [i.e. actor's] goods or services." And, this omission is consequential because we not only "defer to the Legislature to craft statutes" but also "interpret them as written." Liberty Mut. Ins. Co. v. Adcock , 412 S.W.3d 492, 499 (Tex. 2013). As written, § 27.010(b) does not require that the speaker utter the defamatory statements for the purpose of enhancing the sale of his own products or services. So, the statutory basis underlying Castleman's argument is missing.
We do not know why the differences between the Texas and California provisions were not addressed in Newspaper Holdings and every other opinion relying upon it. It may well be that they were not brought to the attention of the respective courts. Yet, they were brought to our attention, and we must acknowledge them to avoid breaching the mandate of *687 Liberty Mutual . And, the differences lead us to conclude that the California statute does not control the interpretation of our § 27.010(b). Nor do the opinions of those Texas intermediate and federal courts expressly or impliedly incorporating into § 27.010(b) aspects of the California exemption control our decision. Precedent obligates us to apply § 27.10(b) as written; we cannot rewrite the statute to include elements or language the Texas Legislature excluded.
Simply put, Castleman is mistaken when suggesting that it is "nonsense" to read the commercial-speech exemption as applying to anything other than falsehoods uttered "in an attempt to win business for the speaker." Indeed, commercial speech historically has not been afforded the expansive protections under the First Amendment as has other forms of speech. See Pruett v. Harris County Bail Bond Bd. , 249 S.W.3d 447, 456 (Tex. 2008) (stating that "[c]ommercial speech is generally afforded less constitutional protection than other forms of constitutionally guaranteed expression").[2] It may well be that our legislature opted to reduce the protective umbrella cast by the TCPA by exempting statements made to an actual or potential customer of either the speaker or the party about whom he speaks. It may be that the governing body did not care to protect statements made or conduct undertaken only to further the business of the speaker or actor. It is not for us to say. It is for us to apply § 27.010(b) as written, and as written, the limitation urged by Castleman does not appear in express words of the statute.
Given the limited scope of Castleman's complaint regarding application of § 27.010(b), it failed to establish that the trial court erred in concluding that the circumstances at bar were exempt from the TCPA. That alone is enough to affirm the decision and to relieve us of the obligation to address other arguments urged by Castleman.
The order of the trial court denying Castleman's motion to dismiss Offline's suit for defamation is affirmed.

Patterson was the source of the information contained in the articles published by Newspaper Holdings. Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd. , 416 S.W.3d at 75.

See Clark v. State , 665 S.W.2d 476, 482-83 (Tex. Crim. App. 1984) (stating that intentionally false or misleading statements made in a commercial context do not fall within the ambit of the First Amendment); Owens v. State , 820 S.W.2d 912, 914 (Tex. App.-Houston [1st Dist.] 1991, pet. ref'd) (stating the same).