# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-11254

United States Court of Appeals
Fifth Circuit

**FILED**
August 21, 2017

Lyle W. Cayce
Clerk

SCA PROMOTIONS, INCORPORATED,

> Plaintiff - Appellant Cross-Appellee

v.

YAHOO!, INCORPORATED,

> Defendant - Appellee Cross-Appellant

———————

Appeals from the United States District Court
for the Northern District of Texas

———————

Before STEWART, Chief Judge, and JONES and CLEMENT, Circuit Judges.
EDITH BROWN CLEMENT, Circuit Judge:

SCA Promotions, Inc. ("SCA") brought a breach of contract suit against Yahoo!, Inc. ("Yahoo"), alleging that Yahoo failed to pay contractual cancellation fees. Yahoo brought various counterclaims. The district court granted Yahoo's motion for summary judgment and denied SCA's motion for summary judgment on SCA's breach of contract claim. It granted SCA's motion for summary judgment and denied Yahoo's motion for summary judgment on all of Yahoo's counterclaims. The district court later amended its judgment and awarded $550,000 to Yahoo. We REVERSE the district court's summary judgment in favor of Yahoo as to SCA's breach of contract claim and VACATE the award; we also REVERSE the district court's denial of SCA's motion for

No. 15-11254

summary judgment as to its breach of contract claim and RENDER judgment in favor of SCA in the amount of $4.4 million. We REMAND for the district court to award appropriate attorneys' fees and interest to SCA. We DISMISS as MOOT SCA's appeal of the district court's order amending the judgment. We AFFIRM the district court's grant of summary judgment to SCA and denial of summary judgment to Yahoo as to Yahoo's counterclaims.

I

Yahoo wanted to sponsor a perfect bracket contest in connection with the 2014 NCAA Men's Basketball Tournament, with a $1 billion prize for any contestant who correctly predicted the winner of all 63 games ("Contest"). SCA provides risk management for marketing and prize promotions. Yahoo and SCA negotiated terms and eventually executed Contingent Prize Contract #70816 ("Contract"). The Contract was dated and signed by SCA on December 27, 2013; Yahoo signed the Contract on January 2, 2014. In return for a fee, SCA agreed to pay the $1 billion prize if any contestant won the Contest and to obtain underwriting coverage "to cover full payment of the prize amount . . . from providers with an A.M. Best rating of A+." Yahoo was responsible for preparing the Contest's Official Promotion Rules, "subject to the Promotion underwriter's review and approval, which shall not be unreasonably withheld, and which shall be provided no later than January 3, 2014." The Contract provided for 10 million entries and referred to invoices regarding the contract fee.

Two invoices, dated December 27, 2013, were attached to the Contract with continuous pagination. According to the second invoice, the contract fee was $11 million. Yahoo owed an initial deposit of $1.1 million to SCA "[o]n or before December 31, 2013"; the remaining $9.9 million was due to SCA "[o]n or before February 15, 2014." The Contract also provided for up to 20 million

2

additional entries, with a fee of 25 cents per entry, to be separately invoiced if incurred.

The Contract permitted Yahoo to cancel the Contract, with cancellation fees that varied according to when Yahoo cancelled. Section 2(k) of Exhibit A of the Contract ("Cancellation Fees Provision") provided as follows:

> Cancellation fees: Upon notice to SCA to be provided no later than fifteen (15) minutes to Tip-Off of the initial game, Yahoo may cancel the contract. In the event the contract is cancelled, Yahoo will be entitled to a refund of all amounts paid to SCA subject to the cancellation fees set forth in this paragraph. The parties hereto stipulate that the contract shall be signed on or before December 31, 2013. Should the signed contract be cancelled after that time and before January 15, 2014 a cancellation penalty of 25% of the fee will be paid to SCA. Should the signed contract be cancelled between January 16, 2014 and February 15, 2014, a cancellation penalty of 50% of the fee will be paid to SCA by Sponsor. Should the signed contract be cancelled after February 16, 2014, a cancellation penalty of 75% of the fee will be paid to SCA by Sponsor.

The Contract also contained a provision that limited the parties' liability to each other "to the amount of fees paid by Sponsor [Yahoo] hereunder" ("Limitation of Liability Provision").

Yahoo paid the initial $1.1 million deposit to SCA on January 13, 2014. On January 21, 2014, Quicken Loans Inc. ("Quicken") revealed that it was sponsoring a similar $1 billion perfect bracket contest with Warren Buffett and Berkshire Hathaway ("Quicken Contest"). Yahoo and Quicken agreed that Yahoo would co-sponsor the Quicken Contest. Yahoo then cancelled the Contract with SCA on January 27, 2014, demanding repayment of the $1.1 million initial deposit and "the cancellation of the . . . Contract without penalty to Yahoo on or before February 7, 2014."

SCA brought suit against Yahoo for breach of contract, alleging that Yahoo owed SCA $4.4 million. It argued that Yahoo owed $5.5 million in

cancellation fees pursuant to the Contract—50 percent of the $11 million contract fee—minus the $1.1 million initial deposit Yahoo already paid. Yahoo brought multiple counterclaims, alleging, among other things, that SCA breached a previous agreement's confidentiality provision as well as the Contract's requirement to obtain risk coverage.

After the close of discovery, SCA and Yahoo cross-moved for summary judgment. The district court granted summary judgment to Yahoo and denied summary judgment to SCA on SCA's breach of contract claim, and it granted summary judgment to SCA and denied summary judgment to Yahoo on all of Yahoo's counterclaims. The district court issued its final judgment and dismissed all claims with prejudice.

Yahoo then moved the district court to alter or amend its judgment pursuant to Federal Rule of Civil Procedure 60(a), arguing that the district court made a clerical mistake by not awarding Yahoo a $550,000 refund. The district court granted Yahoo's motion and amended its final judgment accordingly. SCA and Yahoo timely appealed.

II

This court reviews *de novo* an order granting summary judgment, "applying the same standard as the district court." *Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Fed. R. Civ. P. 56(a).

"The interpretation of a contract—including whether the contract is ambiguous—is a question of law, which we review *de novo*." *McLane Foodservice, Inc. v. Table Rock Restaurants, L.L.C.*, 736 F.3d 375, 377 (5th Cir. 2013) (citing *Prescott v. Northlake Christian Sch.*, 369 F.3d 491, 495 (5th Cir. 2004)). "If the contract is ambiguous, then 'the determination of the parties' intent through the extrinsic evidence is a question of fact.'" *Prescott*, 369 F.3d

No. 15-11254

at 495 (quoting *Watkins v. Petro-Search, Inc.*, 689 F.2d 537, 538 (5th Cir. 1982)).

### III

SCA appeals the district court's rulings: (1) granting summary judgment to Yahoo regarding SCA's breach of contract claim; (2) denying summary judgment to SCA regarding SCA's breach of contract claim; and (3) granting Yahoo's Rule 60(a) motion to amend the final judgment to include a $550,000 award to Yahoo. The primary issue is the proper interpretation of the Contract and the meaning of the Cancellation Fees Provision. We hold that SCA's interpretation of the Cancellation Fees Provision is reasonable, and that the Contract is not ambiguous because Yahoo fails to provide a reasonable alternate interpretation. We REVERSE the district court's grant of summary judgment to Yahoo and VACATE its award to Yahoo, REVERSE the district court's denial of summary judgment to SCA, and RENDER judgment in favor of SCA on its breach of contract claim. We also DISMISS as MOOT SCA's appeal of the district court's Rule 60(a) order.

Yahoo appeals the district court's rulings regarding only two of its counterclaims: (1) breach of the confidentiality provision in a previous agreement; and (2) breach of the Contract's coverage requirement. We AFFIRM the district court's judgment as to Yahoo's counterclaims.

### A

Because Yahoo cancelled the Contract on January 27, 2014, the applicable clause in the Cancellation Fees Provision provides that "a cancellation penalty of 50% of the fee will be paid to SCA by Sponsor [Yahoo]." The parties dispute the meaning of "50% of the fee." SCA argues that the cancellation fee is $5.5 million because "50% of the fee" means 50 percent of the $11 million contract fee. Yahoo argues that the cancellation fee is $550,000 because "50% of the fee" means 50 percent of the $1.1 million that Yahoo had

already paid to SCA when Yahoo cancelled the Contract. The district court held that Yahoo's interpretation of the Cancellation Fees Provision is correct. We disagree and hold that "50% of the fee" means 50 percent of the $11 million contract fee.

The parties agree that Texas substantive law governs this dispute. Under Texas law, we must first determine "whether the contract is enforceable as written, without resort to parol evidence." *McLane*, 736 F.3d at 377 (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003)). "The primary objective of the reviewing court is to ascertain the intentions of the parties as expressed in the contract." *Id.* (citing *Lopez v. Munos, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 861 (Tex. 2000)). The panel must "examine the entire contract" to "harmonize and give effect to all of its provisions so that none will be rendered meaningless." *Id.* at 377–78 (internal quotation marks omitted) (quoting *Webster*, 128 S.W.3d at 229). "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Webster*, 128 S.W.3d at 229. "We give [contractual] terms their plain, ordinary and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense." *Heritage Res., Inc. v. NationsBank, Co.*, 939 S.W.2d 118, 121 (Tex. 1996).

Before interpreting the meaning of "50% of the fee," it is necessary to determine whether the two invoices setting the contract fee and due dates are part of the Contract. The district court determined that "the Contract's terms do not expressly set an $11 million fee." According to the district court, "[n]owhere does the Contract specify or identify the invoices, when they will be paid, or otherwise provide that the fee is $11 million." But the Contract references "invoice(s)" several times, and it provides that "[t]his contract, *including exhibits and attachments*, represents the entire final agreement

between Sponsor [Yahoo] and SCA, and supersedes any prior agreement, oral or written." Although the Contract does not explicitly identify the invoices to which it refers, two invoices are attached to the Contract with pagination continuous with the rest of the Contract. The attached invoices are dated December 27, 2013—the same date as the Contract itself and before Yahoo signed the Contract on January 2, 2014. It is clear from the Contract's terms that the invoices are part of the Contract. *See In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010) ("Documents incorporated into a contract by reference become part of that contract."). Accordingly, the district court's conclusion that the Contract does not specify an $11 million fee was in error.

It is clear to us that "50% of the fee" means 50 percent of the $11 million contract fee. This interpretation is consistent with the plain language and structure of the Cancellation Fees Provision, as well as with several other provisions of the Contract.

First, the plain reading of the relevant clause is that "the fee" refers to the "contract fee" the parties agreed to in the Contract. The Contract provides that the contract fee was $11 million, as set forth in the second attached invoice. The plain reading is thus that "the fee" means the $11 million contract fee.

Second, the Cancellation Fees Provision repeatedly states that "a cancellation penalty . . . *will be paid* to SCA by Sponsor [Yahoo]." If "50% of the fee" means 50 percent of the fees *already* paid, there is no situation in which a cancellation fee "will be paid" to SCA by Yahoo. Yahoo's interpretation would thus render this language meaningless. SCA's interpretation would give effect to this forward-looking language because "a cancellation penalty . . . *will be paid* to SCA by Sponsor [Yahoo]" if "the fee" means the $11 million contract fee.

7

No. 15-11254

Third, SCA's interpretation would still give meaning to the refunds clause in the Cancellation Fees Provision. Yahoo would not have to pay cancellation fees *in addition to* whatever amount it already paid. Previous payments count towards the cancellation fees.

Finally, the Limitation of Liability Provision does not alter this straightforward interpretation of the Cancellation Fees Provision. The Limitation of Liability Provision generally limits the parties' liability to each other "to the amount of fees paid by Sponsor [Yahoo] hereunder" and is set forth in the indemnification context. "No single provision taken alone will be given controlling effect." *Webster*, 128 S.W.3d at 229. If the Contract limits Yahoo's liability to whatever it already paid to SCA, the provisions imposing a duty of payment on Yahoo are meaningless. In this context, it is sensible to read the Limitation of Liability Provision to limit the parties' liability "to the amount of fees [to be] paid by Sponsor [Yahoo] hereunder."[1] Furthermore, even if the Limitation of Liability Provision and the Cancellation Fees Provision are inconsistent, the more specific Cancellation Fees Provision controls. *See Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133–34 (Tex. 1994) (explaining that a "more specific [contract] provision will control" a general contract provision).

SCA offers a reasonably clear interpretation of the Cancellation Fees Provision that is consistent with the Contract as a whole. Yahoo fails to provide a reasonable alternate interpretation. We thus conclude that "the fee" in the Cancellation Fees Provision refers to the $11 million contract fee.

---

[1] This interpretation would also allow liability for any fees incurred if Yahoo accepted additional entries to the contest beyond the initial 10 million. If the Contract explicitly set $11 million as the liability limit, it would insulate Yahoo from its obligation to pay the agreed-upon 25 cents per additional entry.

No. 15-11254

B

The district court granted summary judgment to SCA and denied summary judgment to Yahoo on all of Yahoo's counterclaims. Yahoo appeals the district court's decision as to only two of its counterclaims: (1) its claim that SCA breached the confidentiality provision in Yahoo's Vendor Master Terms and Conditions ("VMTC"); and (2) its claim that SCA breached the Contract because it did not finalize coverage for the contest. We AFFIRM.

First, Yahoo argues that SCA breached the confidentiality provision in the VMTC by disclosing the Contest to Buffett and Berkshire Hathaway without first obtaining Yahoo's authorization or binding Berkshire Hathaway to a confidentiality agreement. The district court determined that, even if the VMTC applied, "SCA did not violate its plain language." We agree. Section 5 of the VMTC ("Confidentiality Provision") prohibits disclosing "Confidential Information" to "any person or entity." The Confidentiality Provision defines "Yahoo Confidential Information" as "any information . . . that is designated as 'Confidential,' 'Proprietary,' or some similar designation." The Confidentiality Provision also states that "[n]otwithstanding the foregoing, Yahoo Confidential Information includes the terms of the Agreement and Yahoo Data." Yahoo does not argue that it designated any information confidential.[2] Yahoo argues—for the first time on appeal—that the Concept was "Yahoo Data." But "arguments not raised before the district court are waived and cannot be raised for the first time on appeal." *LeMaire v. La. Dep't of Transp. & Dev.,* 480 F.3d 383, 387 (5th Cir. 2007). SCA did not breach the Confidentiality Provision because any information that SCA disclosed to Berkshire Hathaway was not confidential information within the meaning of the Confidentiality Provision.

---

[2] Yahoo argues that "SCA was *aware of* Yahoo's designation of the Concept as confidential information." But Yahoo does not argue that it actually designated any information confidential.

No. 15-11254

Second, Yahoo argues that SCA breached Section 4(h) of the Contract because it did not obtain coverage for the full prize amount. Section 4(h) provides that:

> SCA represents and warrants that it will obtain the coverage necessary to cover full payment of the prize amount as exhibited in this contract from providers with an A.M. Best rating of A+ and will authorize the payment of said funds directly to Sponsor as a loss-payee and SCA shall provide Sponsor a certificate evidencing such designation as a loss-payee within ten calendar (10) days of the Effective Date of this Agreement.

Ten days from the December 27, 2013 effective date of the Contract was January 6, 2014. It is undisputed that SCA did not finalize coverage with D. E. Shaw or another underwriter for the full prize amount by that date or before Yahoo cancelled the Contract. But SCA was excused from this obligation. As the district court explained, SCA's coverage obligation was unambiguously conditioned on Yahoo first providing the Official Promotion Rules for the underwriter's review and approval. SCA did not breach the Contract by failing to finalize coverage because Yahoo did not provide the Official Promotion Rules before it cancelled the Contract.

IV

We REVERSE the district court's summary judgment in favor of Yahoo as to SCA's breach of contract claim and VACATE the award. We REVERSE the district court's denial of SCA's motion for summary judgment as to its breach of contract claim and RENDER judgment in favor of SCA in the amount of $4.4 million.[3] We REMAND for the district court to award appropriate attorneys' fees and interest to SCA. We also DISMISS as MOOT SCA's appeal of the district court's Rule 60(a) order. As to Yahoo's counterclaims, we

---

[3] We subtract Yahoo's $1.1 million initial deposit from the $5.5 million cancellation fee.

10

No. 15-11254

AFFIRM the district court's grant of summary judgment to SCA; we also AFFIRM the district court's denial of summary judgment to Yahoo.