# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

May 3, 2018

Lyle W. Cayce
Clerk

No. 17-40582

DIAMOND CONSORTIUM, INCORPORATED, doing business as Diamond Doctor; DAVID BLANK,

Plaintiffs – Appellees,

v.

MARK HAMMERVOLD; HAMMERVOLD, P.L.C.,

Defendants - Appellants

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:16-CV-94

Before STEWART, Chief Judge, and CLEMENT and SOUTHWICK, Circuit Judges.

PER CURIAM:*

This interlocutory appeal reaches this court after attorney Mark Hammervold and his law firm Hammervold PLC (collectively, "Hammervold") unsuccessfully sought to dismiss a Texas civil conspiracy claim in federal court. Hammervold argues that the claim, in violation of Texas's Citizens'

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Participation Act ("TCPA"),[1] is based on, relates to, or in response to the exercise of the right to petition, specifically Hammervold's communication in or pertaining to a judicial proceeding. Because we conclude that the civil conspiracy claim is not based on, related to, or in response to Hammervold's communications in or pertaining to a judicial proceeding, we AFFIRM.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case revolves around an alleged scheme undertaken by Nashville-based lawyers and their law firms to defraud diamond retailers across the country. The lawyers and law firms involved in the purported scheme are Mark Hammervold, his law firm Hammervold PLC, Brian Manookian ("Manookian"), Brian Cummings ("Cummings"), and their law firm Cummings Manookian PLC.[2] The diamond retailer and wholesaler is Dallas-based Diamond Consortium, Inc. and its owner David Blank ("Blank") (collectively, "Diamond Consortium").

Diamond Consortium alleges that Manookian, capitalizing on the varied systems of grading diamonds, undertook a "nationwide, sophisticated, multipronged shakedown operation," targeting retail jewelers. Manookian associated with others, including Hammervold, to promote and perpetrate this extortion scheme across the jewelry industry. To do so, Hammervold, at the outset, agreed to accept any referrals of consumer clients from Manookian when Manookian sought to engage the defamed jewelers thereby allowing

---

[1] The TCPA is Texas's anti-SLAPP statute. SLAPP stands for strategic lawsuit against public participation. *See* George W. Pring and Penelope Canan, "Strategic Lawsuits Against Public Participation" ("SLAPPs"): An Introduction for Bench, Bar, and Bystanders, 12 BRIDGEPORT L. REV. 937 (1992). Statutes like the TCPA, as the acronym indicates, seek to protect citizens from retaliatory lawsuits based on their exercise of fundamental constitutional rights. *Id.* at 938–40.

[2] On August 16, 2017, Manookian, his partner Brian Cummings, and Cummings Manookian PLC entered into a confidential settlement agreement with Diamond Consortium.

No. 17-40582

Manookian to avoid an appearance of conflict when Manookian entered into extortionate retainer agreements with jewelers.

The scheme, according to the Consolidated Complaint, was executed through the use of internet, social media, and door hanger smear campaigns, all of which attacked jewelers as criminals and fraudsters. Manookian allegedly undertook the operation to contrive a legal dispute with the sole goal of extorting millions of dollars from Diamond Consortium and other jewelers. After feeling that their businesses were in jeopardy, the jewelers, with the encouragement of Manookian client Boaz Ramon ("Ramon"), sought to buy peace through engagement agreements with Manookian. Each time, prior to the commencement of a campaign, Ramon would reach out to jewelers warning them to get on board with Manookian before it was too late.

In the fall of 2015, Manookian, Cummings Manookian, Hammervold, and Hammervold PLC purportedly targeted Diamond Consortium. Using two websites, door hangers, Youtube videos, and Facebook posts, Manookian, among other things: (1) accused Diamond Consortium of having committed "diamond fraud" and "cheat[ing]" customers through the sale of "overgraded" diamonds; (2) asked Diamond Consortium employees, "[d]o you work here? Ask David Blank if you could be personally liable for the fraudulent sale [of diamonds]?"; (3) posted a Youtube video with the title "Diamond [Consortium] Scam: 3 Reasons Why Diamond [Consortium] Are Frauds"; and (4) distributed door hangers reading, "Diamond [Consortium] has been ripping off unsuspecting customers with . . . overgraded diamonds."

Listening to the stories of other jewelers about their experience with the potentially business-crippling campaign and believing he had no other options, Blank eventually engaged Manookian about the idea of Cummings Manookian serving as Diamond Consortium's legal counsel. Manookian stated that Diamond Consortium would need to pay $5 million, not to compensate his

3

supposed clients' claims, but instead to end the negative publicity campaign. After Blank balked at the idea of $5 million, Manookian asserted he was not interested in representing Diamond Consortium. Manookian eventually re-engaged, offering to take $25,000 monthly retainers over ten years—in total, $3 million.  Manookian agreed to represent Diamond Consortium on or about November 13, 2015. With respect to potential conflicts, Manookian stated that he and Cummings Manookian would represent Diamond Consortium without issue because"[a]s long as [he] . . . [did not] sign[] . . . an engagement agreement with [consumers], then there's no issue there."

The agreement eventually fell apart because Blank would be required to pay the full $3 million if Cummings Manookian was terminated. After the deal fell apart, Manookian reignited the campaign against Diamond Consortium in January 2016. This iteration of the campaign included attempts to buy radio ads, Youtube videos, and fliers. It resulted in the loss of several customers; one customer, after hearing about the campaign, stated that she decided against even considering purchasing a $50,000 diamond from Diamond Consortium despite her sister's recommendation to do so.

Diamond Consortium filed this suit in February 2016 against Manookian. In October 2016, Diamond Consortium filed the Consolidated Complaint adding Hammervold as a party and alleging that Hammervold violated the RICO statue and engaged in a civil conspiracy under Texas law. Diamond Consortium's civil conspiracy allegations against Hammervold alleges that "[t]he extortion scheme and false attack campaign perpetrated by Manookian . . . Hammervold . . . [and] Hammervold, PLC . . . constitute[d] a civil conspiracy under Texas law."  The claim goes on to contend that "Manookian . . . Hammervold . . . and Hammervold, PLC . . . agreed and conspired to smear the business names and ownership of various jewelry retailers across the country."

No. 17-40582

Several weeks later, Hammervold moved to dismiss the claim, arguing that the civil conspiracy claim ran afoul of the TCPA and the allegations failed to state a plausible claim for both civil conspiracy and RICO violations. On April 26, 2017, the district court denied Hammervold's motion to dismiss in part, finding that the TCPA did not protect Hammervold against suit because the allegations that "form the basis of . . . [the] civil action" center around "[t]his scheme, and not the judicial proceedings themselves." The district court similarly denied Hammervold's request to dismiss Diamond Consortium's RICO claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Hammervold timely appealed, asserting that the district court erred in concluding that the TCPA did not apply to Diamond Consortium's allegations and requesting that this court exercise pendent appellate jurisdiction over the district court's denial of his motion to dismiss the RICO claim.

## II.    DISCUSSION

### A. *Jurisdiction*

Pursuant to the collateral order doctrine, this court has jurisdiction over an interlocutory appeal of an order denying a TCPA motion to dismiss. *See NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*, 745 F.3d 742, 747–48 (5th Cir. 2014).

### B. *Standard of Review*

This court reviews the district court's interpretation of the TCPA, a state statute, de novo and interprets the statute in a manner consistent with Texas Supreme Court precedent.[3] *See id.* at 753; *Weiser-Brown Operating Co. v. St.*

---

[3] Although the issue remains unresolved, neither party disputed below nor raised here the appropriateness of applying the TCPA in federal court in light of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). *Cf. Block v. Tanenhaus*, 867 F.3d 585, 589 (5th Cir. 2017) ("The applicability of state anti-SLAPP statutes, such as the TCPA, in federal court is an important and unresolved issue in this circuit."). Because we conclude that the TCPA does not apply to the civil conspiracy claim against Hammervold, we follow previous panels in assuming

No. 17-40582

*Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 517–18 (5th Cir. 2015). "When the highest state court is silent on an issue we must make an *Erie* guess, using the sources of law that the state's highest court would look to." *Weiser-Brown*, 801 F.3d at 518. "In making an *Erie* guess, [federal courts] defer to intermediate state appellate court decisions, unless convinced by other persuasive data that the highest court of the state would decide otherwise." *Temple v. McCall*, 720 F.3d 301, 307 (5th Cir. 2013).

### C. TCPA Burden-Shifting Framework

The TCPA "encourage[s] and safeguard[s] the constitutional rights of persons to petition, speak freely, [and] associate freely" while still "protect[ing] the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE. ANN. § 27.002 (West 2017). In doing so, the TCPA provides a burden-shifting dismissal mechanism at the pleading stage of cases implicating such constitutional rights. *Id.* § 27.005(b)–(d). The party asserting that the TCPA applies carries the initial burden to demonstrate by a preponderance of the evidence that the "legal action . . . is based on, relate[d] to, or . . . in response to a party's exercise of the . . . right to petition." *Id.* §§ 27.003(a), 27.005(b). If the moving party fails to carry its burden, the inquiry ends—the TCPA does not apply. If, however, the moving party meets its initial burden, the burden then shifts to the nonmoving party to "establish[] by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). Clear and specific evidence, "more like a pleading requirement than a summary-judgment standard," is satisfied "by either detailed pleading or supporting affidavits." *Cuba v. Pylant*, 814 F.3d 701, 711

without deciding that Texas's anti-SLAPP statute applies in federal court. *See Culbertson v. Lykos*, 790 F.3d 608, 631 (5th Cir. 2015) ("Because we determine that the TCPA by its own terms has not been shown to apply, we again pretermit the fundamental issue of its applicability in federal court.").

(5th Cir. 2016). "A party need not provide 'evidence' in the traditional sense if the pleadings are sufficiently clear." *Id.*

Even where the nonmoving party clears this clear and specific evidence hurdle, the nonmoving party's case must nevertheless be dismissed where the "moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." TEX. CIV. PRAC. & REM. CODE. ANN. § 27.005(d). Courts construe the pleadings and evidence in favor of the plaintiff. *See Warner Bros. Entm't, Inc. v. Jones*, 538 S.W.3d. 781, 800–01 (Tex. App.–Austin 2017, no pet.).

This statutory framework sets forth a three-step inquiry, looking first to whether the moving party has demonstrated, by a preponderance of the evidence, that "the suit arises from the movant's exercise of his right to . . . petition." *Pylant*, 814 F.3d at 711. Then, if so demonstrated, whether the nonmoving party has presented "clear and specific evidence" establishing a prima facie case for each essential element of the claim in question. *Id.* The second step of the inquiry is essentially rendered nugatory by the third step which requires dismissal if the moving party demonstrates by a preponderance of the evidence each essential element of a valid defense. *See* TEX. CIV. PRAC. & REM. CODE. ANN. § 27.005(d).

*D. Applicability of the TCPA*

We conclude that Hammervold's case fails at the first step of the inquiry—the TCPA does not apply to the civil conspiracy allegations in the Consolidated Complaint.

Before reaching the statutory language, we address Hammervold's reliance upon a particular definition of the exercise of the right to petition. Although the TCPA's "right to petition" refers to a wide range of

communications,[4] Hammervold, when addressing the statute's applicability at the district court, relied exclusively on a theory that the exercise of the right to petition was implicated in this case because the claims were based on, related to, or in response to a communication in or pertaining to a judicial proceeding.[5] Accordingly, we conclude that Hammervold may only rely on the theory that the TCPA applies because the claims are based on, related to, or in response to a communication in or pertaining to a judicial proceeding. *Cf. NCDR*, 745 F.3d at 753 (concluding that failure to raise specific argument concerning applicability of TCPA before the district court rendered the argument waived on appeal). Hammervold conceded at oral argument that he has waived arguing an alternate theory of the exercise of the right to petition before this court. In his Federal Rule of Appellate Procedure 28(j) letter dated April 22, 2018, Hammervold points to the Texas Supreme Court's discussion of waiver in *Adams v. Starside Custom Builders, LLC*, No. 16–0786, — S.W.3d —, 2018 WL 1883075 (Tex. Apr. 20, 2018) to maintain that, despite the foregoing, he is not confined to the arguments presented to the district court. In *Adams*, the Texas Supreme Court observed that the petitioner's failure to rely on a

---

[4] The exercise of the right to petition also includes "a communication that is reasonably likely to encourage consideration or review of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(4)(C). Subsection (E) provides somewhat of a constitutional catchall, defining the "exercise of the right to petition" as "any other communication that falls within the protection of the right to petition government under the Constitution of the United States or the constitution of this state." *Id.* § 27.001(4)(E).

[5] Every specific citation to the definition of the exercise of the right to petition before the district court relied on the only definition considered in the district court's ruling: a communication in or pertaining to a judicial proceeding. Indeed, following Hammervold's argument in the district court that the "sole basis" of Diamond Consortium's Consolidated Complaint was that "Hammervold accepted client referrals from Manookian," Hammervold cited the provision defining the exercise of the right to petition as "a communication in or pertaining to . . . a judicial proceeding." The only case law relied upon by Hammervold exclusively addresses Texas Civil Practice and Remedies Code § 27.001(4)(A)(i). *See Watson v. Hardman*, 497 S.W.3d 601, 605–06 (Tex. App.–Dallas 2016, no pet.).

specific definition in the TCPA before the trial court did not restrict his reliance on that definition on appeal because: (1) the petitioner "expressly mentioned the[] concerns [relevant to that definition] at the hearing on the motion to dismiss;" and (2) the "TCPA directs courts to decide its applicability based on a holistic review of the pleadings." *Id.* at \*5. The first basis is of no benefit to Hammervold, as he does not contend nor does the record support that he ever expressly mentioned or relied on any other definition of the exercise of the right to petition. The latter point, at its core, is the Texas Supreme Court's application of that court's argument waiver principles. Because this court consistently applies its waiver precedent in diversity jurisdiction cases, we will do so here. *See, e.g.*, *SCA Promotions, Inc. v. Yahoo!, Inc.*, 868 F.3d 378, 384 (5th Cir. 2017); *Dejoria v. Maghreb Petroleum Expl., S.A.*, 804 F.3d 373, 384 n.12 (5th Cir. 2015); *Learmonth v. Sears, Roebuck and Co.*, 710 F.3d 249, 256–57, 266–67 (5th Cir. 2013).

Moving to the applicability of the TCPA to Diamond Consortium's civil conspiracy claim, Hammervold fails to carry his burden. "The basis of a legal action is not determined by the defendant's admissions or denials but by the plaintiff's allegations. . . . When it is clear from the plaintiff's pleadings that the action is covered by the Act, the defendant need show no more." *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017).

As with any case turning on statutory interpretation, the plain language of the statute guides the inquiry. *See ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017) (per curiam). The statutory language that is the focus of this case is "a communication in or pertaining to . . . a judicial proceeding." TEX. CIV. PRAC. & REM. CODE. ANN. § 27.001(4)(A)(i). The TCPA does not provide a definition of judicial proceeding. A "[c]ommunication includes the making or submitting of a statement or document in any form or

medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1).

Hammervold's argument distills to the contention that the TCPA protects him from liability because the civil conspiracy claim is based on, related to, or in response to actions he took as a lawyer on behalf of clients. First, Hammervold argues that Diamond Consortium's conspiracy claim is precluded by the TCPA because the allegedly wrongful conduct—accepting referrals to represent a client—is an exercise of the right to petition. Hammervold underscores the Consolidated Complaint's inclusion of allegations that the "prosecuti[on] [of] claims" against the targeted jewelers was his association-in-fact involvement in the RICO conspiracy.[6] Continuing with this line of argument, Hammervold contends that the allegations of Hammervold's willingness and availability to represent plaintiffs against Diamond Consortium were still at least related to or in response to protected petitioning activity. Hammervold argues that the report and recommendation in *Walker v. Beaumount Indep. Sch. Dist.*, No. 1:15-CV-379, 2016 WL 3456983 (E.D. Tex. Jan. 22, 2016), *adopted by* 2016 WL 3672224 (E.D. Tex. Feb. 11, 2016), which Hammervold contends held that mere legal representation was protected by the TCPA, is on all fours with this case.

---

[6] Notably, Hammervold on one hand appropriately acknowledges that the TCPA's application is limited to state law claims, *see Hillsborough Cty., Fla. v. Auto. Med. Labs.*, Inc., 471 U.S. 707, 712–13 (1985), but relies on this RICO claim-specific allegation to bring the civil conspiracy claim under the protection of the TCPA. Regardless, this passing mention of prosecution of claims should not be given talismanic value and does not turn generally unprotected activity to protected activity. In the same vein, we reject Hammervold's reliance on the appellate court decision in *Lona Hills Ranch, LLC v. Creative Oil & Gas*, No. 03-17-00743-CV, — S.W.3d —, 2018 WL 1868054 (Tex. App.–Austin Apr. 19, 2018) in his April 22, 2018 Rule 28(j) letter. The decision did not rely on *Cavin v. Abbott*, ⸺ S.W.3d ⸺, No. 03-16-00395-CV, 2017 WL 3044583, at *10–11 (Tex. App.—Austin July 14, 2017, no pet.), as Hammervold contends, when rejecting the argument that counterclaims were not related to the exercise of the right of free speech.  More importantly, Hammervold does not contend that *Lona Hills*'s discussion of the exercise of the right to petition benefits his case.

No. 17-40582

Diamond Consortium counters by arguing that Hammervold is not being sued for an exercise of the right to petition as defined in the TCPA. To the contrary, the allegations are extraneous to any judicial proceeding focusing instead on Hammervold's agreement to extort money from various jewelers outside of actually filing any case. Diamond Consortium explains that the Consolidated Complaint does not concern itself with Hammervold's role as opposing counsel because it focuses on their actions in orchestrating the scheme notwithstanding any judicial proceedings.

Diamond Consortium presents a more persuasive argument. The civil conspiracy claim is not based on, related to, or in response to a communication in or pertaining to a judicial proceeding.

Critical to this conclusion is the ordinary meaning of "a judicial proceeding." Judicial proceeding is not statutorily defined, but numerous decisions from Texas courts of appeals have compellingly explained that the "ordinary meaning" of that phrase is "an actual, pending judicial proceeding." *Cashion*, 517 S.W.3d at 220. Accordingly, pre-suit demand letters were not "pertaining to a judicial proceeding." *Id.*; *see also Levatino v. Apple Tree Café Touring, Inc.*, 486 S.W.3d 724, 728–29 (Tex. App.–Dallas 2016, pet. denied) (recognizing that the ordinary meaning of "a judicial proceeding is 'any proceeding initiated to procure an order or decree, whether in law or in equity'") (quoting *Judicial Proceeding*, BLACK'S LAW DICTIONARY (10th ed. 2014)). This court in *Pylant*, addressing a university proceeding, clarified that the statute does not require a "live proceeding." We concluded that the TCPA was implicated where there was still availability to make "a request to reverse a decision rendered in the [university] proceeding." 814 F.3d at 712. Taken together, these cases demonstrate that the ordinary meaning of judicial proceeding, as envisioned by the TCPA, invokes a filed, and generally ongoing, proceeding.

This reading does not, as the Texas Supreme Court warned against in *Coleman*, seek to add limiting language to the statute in contravention of its intended meaning. 512 S.W.3d at 900 (warning that courts may not by judicial fiat add words to a statute). Rather, the plain language of the statute's terms are vindicated by this interpretation. The broad language preceding "a judicial proceeding," namely "pertaining to," does not negate the important, independent meaning of "judicial proceeding." "In" or "pertaining to" simply modifies what communications fall within the ambit of a judicial proceeding for purposes of protection under the TCPA.  In other words, the term judicial proceeding must have its own, ordinary meaning, and, once given that ordinary meaning, serves as the focus of what the purported communication is made in or pertains to.  *See, e.g.*, *Levinson Alcoser Assocs., LP v. El Pistolon II, Ltd.*, 513 S.W.3d 487, 493 (Tex. 2017) ("We endeavor to interpret each word, phrase, and clause in a manner that gives meaning to them all."). Before determining whether a communication is in or pertains to a judicial proceeding, then, it is appropriate to independently define "a judicial proceeding."

The ordinary meaning of judicial proceeding requires an actual, pending proceeding. *See Cashion*, 517 S.W.3d at 220 ("The ordinary meaning of the phrase 'judicial proceeding'—versus, e.g., 'future,' 'potential,' or 'threatened' judicial proceeding—is an actual, pending judicial proceeding."); *Levatino*, 486 S.W.3d at 729 (same); *QTAT BPO Sols. v. Lee & Murphy Law Firm*, 524 S.W.3d 770, 777–78 (Tex. App.–Houston [14th Dist.] Mar. 7, 2017, pet. filed) (same). This circuit's holding in *Pylant* fits firmly within the scope of this conclusion. The proceeding in that case remained an "actual, pending" proceeding notwithstanding the initial judgment because an appeal was permitted and the letter requesting reversal of the initial judgment pertained to that proceeding.  *See* 814 F.3d at 712.

No. 17-40582

The allegations against Hammervold are not based on, related to, or in response to a communication in a filed proceeding.  Rather, the scheme alleges that separate and apart from a communication in or about a judicial proceeding, Hammervold entered into an agreement with Manookian to defame and defraud Diamond Consortium. The allegations concern Hammervold's agreement to assist in targeting Diamond Consortium in the fall of 2015, long before any inkling of a judicial proceeding. Hammervold does not point this court's attention to TCPA-related precedent interpreting a communication in or pertaining to a judicial proceeding to protect a party from suit based upon such allegations.

We decline to adopt Hammervold's interpretation of the outlier holding set forth in *Quintanilla v. West*, 534 S.W.3d 34, 46 (Tex. App.–San Antonio 2017), where that court concluded it was sufficient that the communicative activity that formed the basis for the plaintiff's claims—the filing of financing statements in public records—were made in "in anticipation of imminent litigation." Reading the statutory provision in this manner runs contrary to the Texas Supreme Court's admonishment that lower courts not modify the plain meaning of a statute by "adding words that are not contained in the language of the statute." *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 508 (Tex. 2015) (per curiam). Moreover, that decision did not engage in an independent analysis of the ordinary meaning of the term "a judicial proceeding."  *Quintanilla,* 534 S.W.3d at 46–47.

Importantly, each case relied upon by the panel in *Quintanilla* to reach its conclusion involved suits based on, related to, or in response to filings in pending lawsuits, actual prosecution of claims, or filing of lis pendens. *See id.* (citing *Martin v. Bravenec*, No. 04-14-00483-CV, 2015 WL 2255139, at *6 (Tex. App.–San Antonio May 13, 2015, pet. denied) (noting that subsequent action "relate to [moving party's] pending claim in the underlying lawsuit"); *James v.*

13

*Calkins*, 446 S.W.3d 135, 147–48 (Tex. App.–Houston [1st Dist.] 2014, pet. denied) (noting that claims were "based on, relate[d] to, or in response to" claims the nonmoving party made in pleadings filed in various lawsuits and the lis pendens filed to give notice of claims in another lawsuit); *Serafine v. Blunt*, 466 S.W.3d 352, 359–60 (Tex. App.–Austin 2015, no pet.) (noting that counterclaims by the nonmoving party in part based on, related to, or in response to filing of lawsuit and lis pendens). *Quintanilla*'s reliance on these cases casts doubt on its holding and, more notably, makes clear that Hammervold's reliance on the case is unavailing. More specifically, *Quintanilla* is not convincing because: (1) there was no imminent litigation principle announced in any of the aforementioned cases upon which *Quintanilla* relies; (2) the plain language of the statute does not support its holding; and (3) the Texas Supreme Court's instructions that courts not make additions to the statute in contravention of the plain meaning is not given effect.

Even accepting the *Quintanilla* court's explanation, Hammervold still does not carry his burden. Hammervold does not contend that he has undertaken anything akin to the filing of a financing statement to perfect security interests in leases and mineral interests as the moving party did in *Quintanilla*. The core of Hammervold's actions underlying the civil conspiracy claim simply do no implicate a communication in or pertaining to a judicial proceeding. *Cashion*, 517 S.W.3d at 219 (holding that pre-suit demand letters were not communications "pertaining to a judicial proceeding"). To the contrary, the gravamen of Diamond Consortium's civil conspiracy allegations against Hammervold concern "[t]he extortion scheme and false attack campaign perpetrated by Manookian . . . Hammervold . . . [and] Hammervold, PLC . . . [which] constitute[d] a civil conspiracy under Texas law." The claim goes on to contend that "Manookian . . . Hammervold . . . and Hammervold,

PLC . . . agreed and conspired to smear the business names and ownership of various jewelry retailers across the country."

Hammervold's contention that a magistrate judge's later-adopted report and recommendation in *Walker* counsels a different conclusion is misplaced. From an analytical perspective, in *Walker* "all parties agree[d] that the TCPA applie[d] to the plaintiffs' claims." 2016 WL 3456983, at *5. The court nevertheless addressed the TCPA's applicability and, citing to a California Supreme Court decision *Briggs v. Eden Council for Hope and Opportunity*, 969 P.2d 564, 569–70 (Cal. 1999), summarily concluded that the TCPA was implicated because the plaintiffs sought to use defendants' lawyer's "attendance at the [moving party's] criminal trial and legal representation of IBEW as evidence of RICO conspiracy and racketeering, and thus her claims relate to Defendants' rights of association and petition." *Id.* at *6. The magistrate judge's reliance on *Briggs* exemplifies the futility of Hammervold's reliance upon it in this case. At issue in *Briggs* was whether a lawsuit triggering the TCPA had to be about a matter of public concern or public interest. 969 P.2d at 565 (addressing whether "a defendant, moving . . . to strike a cause of action [under an anti-SLAPP statute] arising from a statement made before, or in connection with an issue under consideration by, a legally authorized official proceeding, demonstrate separately that the statement concerned an issue of public significance?").

*Briggs* did not hold that a retainer agreement or ability to hold oneself out as the lawyer of a potential litigant was protected under California's anti-SLAPP statute. *See, e.g., Serafine*, 466 S.W.3d at 386–88 (Pemberton, J., concurring) (discussing *Briggs* and noting that whether the right to petition only protects against lawsuits based on matters of public interest was at the heart of *Briggs*). Neither *Walker* nor *Briggs* reaches the issue of whether

accepting a client referral, by itself, is sufficient to satisfy the TCPA's definition of a communication in or pertaining to a judicial proceeding.

In sum, the plain language of the TCPA definition that Hammervold relies upon does not immunize him from suit.

## III.    CONCLUSION

For the foregoing reasons, the district court's conclusion that the TCPA does not protect Hammervold's alleged actions is AFFIRMED. We decline to exercise pendent appellate jurisdiction over the district court's denial of Hammervold's motion to dismiss Diamond Consortium's RICO claim.