# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 16, 2018

Lyle W. Cayce
Clerk

No. 17-60677
Summary Calendar

NANCY ELSAS, Individually, as personal representative of the Estate of
Louis Jacob Elsas II, and as Trustee of the Residuary Trust of the Louis
Jacob Elsas II, Management Trust U/A, September 28, 2011,

  Plaintiff - Appellee

v.

YAKKASSIPPI, L.L.C., also known as Yakka, also known as Yac,

  Defendant – Appellant

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 5:15-CV-28

Before DAVIS, COSTA, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

A wife, as personal representative of her deceased husband's estate,
entered into an agreement with an oil and gas company. The company agreed
to buy the estate's mineral interests for half a million dollars. But the company
did not keep its end of the bargain, refusing to accept the deed to the mineral

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 17-60677

rights and make the agreed-upon payment. As a defense, the company asserted that the wife had first breached the agreement by trying to renegotiate the price. The district court rejected that defense and granted summary judgment in the wife's favor on both liability and damages. We AFFIRM the liability finding but REVERSE on damages.

I.

Four members of the Elsas family—Nancy, her late husband Louis Jacob, II, Herbert Alan, and Katherine[1]——each owned undivided mineral interests in the Tuscaloosa Marine Shale zone in Mississippi. In August 2014, Yakkassippi, L.L.C. (Yakka), a company formed for the purpose of acquiring oil and gas interests, bought the individual interests owned by Herbert, Katherine, and Nancy for $1.5 million or $500,000 per interest. Around the same time, Yakka also offered to purchase the mineral interests owned by Louis's Estate. On August 20, 2014, Nancy, as personal representative for the Estate, accepted Yakka's $500,000 offer and executed a Purchase and Sale Agreement (PSA). Under the terms of the PSA, both parties agreed to close the sale and exchange the purchase money "on or before 90 days of the date" of the PSA. The PSA also stated that the effective date of the mineral deed would be no later than November 15.

Nancy took the necessary steps for transferring the Estate's mineral rights title to Yakka. Nancy's lawyer, Haley Schwartz, testified that they went to the trouble of reopening the Estate in Florida so that the marketable title for the mineral rights could be transferred. On November 14, Schwartz sent an email to Yakka's agent, informing him that Nancy was prepared to tender the mineral deed the following day, as required by the PSA. Yakka refused to

---

[1] Because this case involves four family members with the same last name (Nancy, Louis, Herbert, and Katherine Elsas), we will refer to the family members by their first names.

No. 17-60677

accept the executed deed and make the agreed-upon payment. Nancy maintains that Yakka declined to pay unless she, Katherine, and Herbert "sign[ed] a release and indemnity agreement as a condition precedent to closing the purchase and sale."

Nancy filed a lawsuit in state court, seeking specific performance to enforce the PSA. As an alternative remedy, Nancy sought compensatory and punitive damages. Yakka removed the case to federal court, denying liability and asserting the defense that Nancy had repudiated the contract by seeking to renegotiate the price.[2] Nancy sought summary judgment. The district court granted her motion, concluding that Yakka breached the contract and that Nancy had not repudiated it. As to damages, the district court ruled that specific performance was not appropriate and instead ordered Yakka to pay $500,000 in damages.

## II.

We begin with Yakka's challenge to the liability ruling, which it only challenges on the ground that the district court should have found a disputed issue on its affirmative defense claiming that Nancy had repudiated the contract prior to the closing date. We review an order granting summary judgment de novo. *SCA Promotions, Inc. v. Yahoo!, Inc.*, 868 F.3d 378, 381 (5th Cir. 2017) (citation omitted). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

Yakka maintains that it refused to close the sale because of legitimate concerns that Nancy, through her agents, was attempting to renegotiate the purchase price and threaten litigation. The Elsas family, according to Yakka,

---

[2] Yakka also asserted the affirmative defenses of equitable estoppel, unclean hands, modification, duress, and coercion. But repudiation is the only defense it continues to assert on appeal.

3

No. 17-60677

was dissatisfied with the amount of money it received for its individual shares. Yakka argues that summary judgment was improper because a factfinder could have concluded that this conduct amounted to a repudiation of the contract. And if that was the case, then Yakka would have been excused from its contractual obligations. *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004).

Yakka's defense focuses on the actions of Sonny Gwin, an attorney whom Herbert and Katherine hired after learning that other family members, with unrelated mineral rights, had received a much higher price from Yakka. Gwin contacted Yakka in an attempt to renegotiate the sale price of Herbert and Katherine's mineral interests under a theory of "gross inadequacy of consideration overreaching from a position of superior knowledge." Gwin kept Nancy's lawyer, Schwartz, apprised of their conversations with Yakka According to Yakka agent Brent Preston, Gwin represented that he was negotiating on behalf of all four interests (including the Estate's), not just Herbert and Katherine's interests. Yakka thus contends that Gwin was acting as an agent of Nancy in the renegotiation, and that the behavior of Gwin, Schwartz, and Herbert constituted a repudiation of the PSA.

Both parties agree that this dispute is governed by Texas law according to the PSA's choice-of-law provision. To establish repudiation under Texas law, Yakka must show that there was "a complete renunciation of the contract, a categorical claim that it never has been, or no longer is, valid and binding whatsoever." *Admiral Motor Hotel of Tex., Inc. v. Cmty. Inns of Am., Inc.*, 389 S.W.2d 694, 700 (Tex. Civ. App.—Tyler 1965, no writ) (quoting *Lumbermens Mut. Cas. Co. v. Klotz*, 251 F.2d 499, 504 (5th Cir. 1958)). In other words, the repudiating party must clearly show a fixed intention not to comply with the terms of the contract in the future. *Ennis Bus. Forms, Inc. v. Gehrig*, 534 S.W.2d 183, 189 (Tex. Civ. App.—Waco 1976, writ ref'd n.r.e.).

Even assuming that Gwin had apparent authority to act on the Estate's behalf, Yakka does not meet this high burden. None of Gwin's statements recounted in the depositions or Preston's affidavit rises to the level of an unequivocal intention to renounce the contract. *See Plains Cotton Coop. Ass'n v. Gray*, 672 F. App'x 372, 376 (5th Cir. 2016) (explaining that "Texas courts require more than a mere attempt to renegotiate material terms of the initial contract to find repudiation"); *see also* 4 ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 973 at 905–06 ("A mere request for a change in the terms . . . of the contract is not in itself enough to constitute a repudiation.").

Summary judgment in favor of the plaintiff on liability was warranted.

III.

Yakka also challenges the damages award. It fares better on this issue.

Nancy sought specific performance of the PSA. That remedy would require Yakka to pay the Estate $500,000 in exchange for the mineral interests. The district court declined this request to enforce the contract and instead awarded damages to the Estate. In doing so, it actually gave the Estate much more than the specific performance it sought. The damages award requires Yakka to pay $500,000 to the Estate, but the Estate does not have to transfer the mineral interest to Yakka! In other words, the Estate receives the full sales price but does not have to give anything up. That obvious windfall is not a proper measure of damages.

Specific performance is a common remedy in real property cases.[3] *Kress v. Soules*, 261 S.W.2d 703, 704 (Tex. 1953) ("Specific performance of a contract for the sale of realty is ordinarily granted where the suit is based on a valid contract, but it is not a remedy which exists as a matter of right."); *Rus-Ann*

---

[3] Mineral rights are real property under Texas law. *Lesley v. Veterans Land Bd.*, 352 S.W.3d 479, 487 (Tex. 2011).

No. 17-60677

*Dev., Inc. v. ECGC, Inc.*, 222 S.W.3d 921, 927 (Tex. App.—Tyler 2007, no pet.) (explaining that specific performance is "more readily available as a remedy for the sale of real estate than for the sale of personal property . . . because damages are generally believed to be inadequate in connection with real property"). But a court may instead award damages, *Kress*, 261 S.W.2d at 704, and in this case the district court exercised its discretion to do so. The "normal measure of damages in a breach-of-contract case is the benefit-of-the-bargain measure, the purpose of which is to restore the injured party to the economic position it would have been in had the contract been performed." *Mays v. Pierce*, 203 S.W.3d 564, 577 (Tex. App.—Houston [14th Dist.] 2006, pet. denied.) Determining the benefit of a real estate deal requires measuring the "difference between the contract price and the property's market value at the time of the breach." *Barry v. Jackson*, 309 S.W.3d 135, 140 (Tex. App.—Austin 2010, no pet.).

Awarding the Estate the contract price without any reduction for the market value of the mineral interests puts it in a much better position than it would have been in had the parties performed the contract. The damages award thus must be vacated. On remand, the district court may either recalculate damages under a benefit-of-the-bargain measure or reconsider whether the straightforward remedy of specific performance is appropriate.

\* \* \*

We AFFIRM the finding of breach of contract, REVERSE the damages award, and REMAND for further proceedings consistent with this opinion.

6