# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 11, 2022

Lyle W. Cayce
Clerk

No. 20-30643

Gwendolyn Antee Hardison,

*Plaintiff—Appellant*,

*versus*

Dale Skinner, *individually and in his capacity as Superintendent*;
School Board of Natchitoches Parish,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Louisiana,
USDC No. 1:18-CV-119

ON PETITION FOR REHEARING EN BANC

Before Dennis, Southwick, and Wilson, *Circuit Judges*.

Per Curiam:*

Treating the petition for rehearing en banc as a petition for panel rehearing, the petition for panel rehearing is DENIED. *See* 5th Cir. R. 35 I.O.P. Because no member of the panel or judge in regular active service

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-30643

requested that the court be polled on rehearing en banc, the petition for rehearing en banc is DENIED. *See* Fed. R. App. P. 35; 5th Cir. R. 35. Our prior panel opinion, *Hardison v. Skinner*, No. 20-30643, 2022 WL 1136038 (5th Cir. Apr. 18, 2022) (unpublished), is WITHDRAWN and the following opinion is SUBSTITUTED therefor:


Plaintiff Gwendolyn Hardison appeals the district court's dismissal of her employment discrimination, defamation, and Louisiana state law claims against the Natchitoches Parish School Board and Dale Skinner, the school board's superintendent. Hardison brought this action after she voluntarily retired six months after defendants placed her on paid administrative leave. The district court granted summary judgment for the defendants on Hardison's claims. Reviewing the court's opinion and considering the parties' briefing, oral argument, and pertinent portions of the record, we find no reversible error in the district court's judgment and affirm.

## I.

Hardison was employed by the school board from November 13, 2003, until January 27, 2016. She supervised a program called the Migrant Education Program, which disbursed financial aid to eligible families. During an audit in 2015, the Louisiana Department of Education found that 60% of the families receiving financial aid through the program were ineligible, forcing NPSB to refund the Louisiana Department of Education a total of $79,842.41. Skinner placed Hardison on administrative leave, with full pay and benefits, pending completion of an investigation by the school board. After six months on paid administrative leave, Hardison retired and submitted a formal letter of resignation through her attorney.

On January 31, 2018, Hardison, an African American woman, filed suit for racial and gender discrimination under Title VII of the Civil Rights

Act of 1964 and Louisiana's Employment Discrimination Law. *See* 42 U.S.C. § 2000e; La. Stat. Ann. § 23:301. She also sought recovery under 42 U.S.C. § 1983 and Louisiana's Teacher Tenure Law on the ground that defendants constructively discharged her without due process of law. La. Stat. Ann. § 17:442. In addition, Hardison asserted claims under Louisiana state law for intentional infliction of emotional distress and defamation. After the parties engaged in discovery, the school board moved for summary judgment while Hardison moved to strike the school board's summary judgment evidence.

The district court denied Hardison's motion to strike and then granted the motion for summary judgment. The court found that Hardison had failed to make a prima facie case for Title VII discrimination; that, alternatively, the school board had a legitimate, non-discriminatory reason for its actions; that Hardison had failed to demonstrate that she had suffered disciplinary action in violation of Louisiana's Teacher Tenure law; and that she had failed to demonstrate that the school board acted with malice in any of its allegedly defamatory statements. Hardison now appeals.

## II.

We review the district court's grant of summary judgment de novo, applying the same standards as the district court. *SCA Promotions, Inc. v. Yahoo!, Inc.*, 868 F.3d 378, 381 (5th Cir. 2017). Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-movant, the court determines "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

No. 20-30643

Hardison's Title VII discrimination claim relies on circumstantial evidence, and "is therefore subject to the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973)." *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017). Under this framework, the plaintiff must first establish her prima facie case,

> which requires a showing that the plaintiff (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group.

*McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (citing *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005)). "If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action." *Id.* at 557 (citations omitted). This "burden is only one of production, not persuasion, and involves no credibility assessment." *Id.* (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000)). If the employer meets its burden, "the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but is instead a pretext for the real discriminatory or retaliatory purpose. To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer." *Id.* (citations omitted).

Hardison contends that when Skinner placed her on administrative leave pending the school board's investigation into the Migrant Education Program disbursements, she suffered a discriminatory adverse employment action cognizable under Title VII. In essence, she takes issue with the way she was treated by the defendants during the six months she remained on leave. Hardison asserts that neither Skinner nor anyone else with the district

apprised her of the status of the investigation or asked for her explanation regarding the misspent funds. In fact, she asserts that the defendants did not communicate with her at all, leaving her simply in limbo and effectively forcing her to resign—that her administrative leave was really a constructive discharge.

In this circuit, "'[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating.' Under this standard . . . placing [the plaintiff] on paid leave—whether administrative or sick—was not an adverse employment action." *Id.* at 559 (quoting *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). While placement on paid administrative leave by itself thus does not constitute an adverse employment action under our precedent, the alleged circumstances surrounding the extended leave at issue here, which Hardison contends amounted to a constructive discharge, arguably might. *Cf. id.* at 557-59 (quoting *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 650 (5th Cir. 2004) (discussing constructive discharge factors and characterizing inquiry as "an objective, 'reasonable employee,' test under which we ask 'whether a reasonable person in the plaintiff's shoes would have felt compelled to resign'")).

But that question is not dispositive here, so we need not resolve it. Hardison cannot make out a prima facie case of gender or race discrimination—even assuming she proved an adverse employment action—because her case falters on the fourth element necessary for such a claim in any event. To substantiate a discrimination claim, Hardison was required to produce evidence establishing that she was treated less favorably than "other similarly situated employees who were not members of the protected class, under nearly identical circumstances." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009) (citing *Abarca v. Metro. Transit Auth.*, 404 F.3d

938, 941 (5th Cir. 2005)). "Nearly identical circumstances" exist "when the employees being compared held the same job responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Id.* at 260 (citations omitted). "And, critically, the plaintiff's *conduct* that drew the adverse employment decision must have been 'nearly identical' *to that of the proffered comparator* who allegedly drew dissimilar employment decisions." *Id.* (emphasis added) (citing *Perez v. Tex. Dep't of Crim. Just.*, 395 F.3d 206, 213 (5th Cir. 2004).

Hardison fails to make the required showing. Her brief on appeal makes passing reference to Steven Solomon, whom she asserts was a "similarly situated white, male co-worker[.]" But the only mentions of Solomon in the record are three statements in Hardison's complaint and summary judgment affidavit: She avers that Solomon was able to hire the individuals he wanted to work in his department while Hardison was not; that Skinner interrupted one of Hardison's routine meetings but never interrupted Solomon's meetings; and that in his capacity as Director of Business Affairs for the school board, Solomon was responsible for financial losses suffered by the district but was never placed on administrative leave. At summary judgment, beyond Hardison's affidavit, Solomon is mentioned in passing in a footnote to Hardison's brief.

Hardison's barebones statements, with nothing more to support them, are insufficient to establish that she was "similarly situated" to Solomon, or that her "conduct that drew the adverse employment decision" was "'nearly identical' to that of [Solomon's]." *Lee*, 574 F.3d at 259–60; *but see Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160–61 (5th Cir. 2021) (noting that "'self-serving' affidavits and depositions may create fact issues even if not supported by the rest of the record"). While Hardison's affidavit may tend to substantiate that "the employees being compared held the same

No. 20-30643

job responsibilities" and "shared the same supervisor," *Lee*, 574 F.3d at 260, she fails to show, through her affidavit or otherwise, that her "conduct that drew the adverse employment decision" was "'nearly identical' to that of the proffered comparator," *id.* In short, she offers no details as to Solomon's alleged misconduct, so that nothing in the record indicates that his alleged violations were "nearly identical" in scope to the government investigation into significant alleged misspending that precipitated Hardison's paid administrative leave. Thus lacking a similarly situated comparator, her discrimination claim fails.

And even if Hardison could establish a prima facie case of race or gender discrimination, her claim nonetheless fails because she has not produced evidence to rebut the school board's legitimate non-discriminatory reason for placing her on administrative leave: The district was investigating a program that Hardison had supervised that had gone seriously awry, costing the district nearly $80,000 in funds that had to be refunded to the State. In response, Hardison presents no evidence of pretext suggesting that she was actually placed on leave for discriminatory reasons. Simply put, on the record before us, Hardison fails to show that her race or gender had anything to do with why she was placed on paid leave. Without such evidence, her Title VII claim fails.

As for her remaining claims, there is likewise no evidence the school board violated the Louisiana Teacher Tenure law (which requires providing an employee with notice and an opportunity to respond if the employee is subject to discipline) because administrative leave does not fall under the Louisiana statute's definition of discipline. La. Stat. Ann. § 17:441(2) ("'Discipline' and 'disciplinary action' shall include only suspension without pay, reduction in pay, or involuntary demotion or dismissal.").

No. 20-30643

And Hardison's defamation claims fail because there is no evidence that defendants lacked a reasonable belief in the truth of any statements related to Hardison's role in the problems with the financial aid disbursement program. Therefore, any statements made about Hardison's performance are conditionally privileged. *See Costello v. Hardy*, 3003-1146 (La. 1/21/04); 864 So. 2d 129, 139-143 (stating that the elements of a defamation claim include proving fault which is held to be "malice, actual or implied[,]" and defining malice as "lack of reasonable belief in the truth of the statement giving rise to the defamation.").

\*          \*          \*

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

No. 20-30643

JAMES L. DENNIS, *Circuit Judge*, specially concurring:

Though I concur in the majority's judgment affirming the district court, I respectfully disagree with its conclusion that Hardison failed to show disparate treatment for the purpose of establishing a prima facie case of discrimination. Hardison submitted evidence that a similarly situated white male administrator had caused monetary losses to the school district in the past more costly than the losses she was accused of, yet no discipline was ever pursued against him. Additionally, she presented evidence of Superintendent Skinner's history of differential treatment of this white male colleague. The defendants do not dispute this evidence, nor have they ever challenged this element of Hardison's prima facie case, either in the district court or in this court. Rather, "the only dispute," according to the defendants, is whether Hardison has presented evidence of an adverse employment action. But the majority declines to resolve this question, instead turning to an aspect of Hardison's claim that is not in contention and applying a novel evidentiary standard to dispose of her case. This innovation is not warranted by our precedent, or by this case.

The prima facie case requirement plays an important, but limited role in the *McDonnell Douglas* analysis. *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981). Because employers rarely declare their discriminatory intent outright, plaintiffs are allowed to rely on circumstantial evidence to prove discrimination claims. *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983). But circumstantial evidence is by its very nature indirect, and therefore may support multiple different propositions—some innocent, some discriminatory. *See Sylvester v. SOS Children's Villages Illinois, Inc.*, 453 F.3d 900, 903 (7th Cir. 2006) (discussing the categories of direct and indirect evidence) (Posner, J.). The prima facie step is an initial pass through the plaintiff's circumstantial evidence that "eliminates the most common nondiscriminatory reasons for the plaintiff's [adverse

treatment]." *Burdine*, 450 U.S. at 254. So long as the plaintiff adduces facts that "if otherwise unexplained, are more likely than not based on the consideration of impermissible factors," she has shown a prima facie case of discrimination. *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978). Thus, "to establish a prima facie case, a plaintiff need only make a very minimal showing." *Thornbrough v. Columbus & Greenville R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985), *abrogated on other grounds by St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993). If her allegations "exude that faint aroma of impropriety that is sufficient to justify requiring the [defendant] to give reasons for its decision." *Id*. at 644.

The majority improperly raises the bar for Hardison, requiring her to prove at the outset that there was a white male "nearly identical" in job responsibilities, supervisor, and disciplinary history, and whose "nearly identical" conduct did not draw unfavorable treatment from the defendant. *Supra* at 5–6. The majority derives this "nearly identical" requirement from *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). To the extent the majority understands *Lee* to require that *all* comparator evidence be comparable along the dimensions of job responsibilities, supervisor, disciplinary history, and conduct, it misreads *Lee* and applies a standard at odds with the Supreme Court's Title VII jurisprudence. *Lee* only said that comparator evidence with these points of comparison "will be deemed" to contain identical circumstances needed for a meaningful comparison. *Id*. at 260. It did not require that all comparator evidence in Title VII cases be comparable in these specific ways. Indeed, *Lee* expressly noted that comparators with different supervisors, disciplinary histories, and violative conduct *could* be sufficient to state a prima facie case. *See id.* at 260–61. This is in line with the Supreme Court's repeated characterization of the prima facie showing as a "flexible evidentiary standard" resistant to "precise formulation" outside of the particular facts of a given case, *Swierkiewicz v.*

*Sorema N. A.*, 534 U.S. 506, 512 (2002), as well as the Court's recent advisement that the standard does not "require the plaintiff to show that those whom the employer favored and those whom the employer disfavored were similar in all but the protected ways." *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 228 (2015). All that is required for a comparator to be similarly situated is that he share "enough common features" with the plaintiff to allow a meaningful comparison. *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir.2007), *aff'd*, 553 U.S. 442 (2008).

In my view, Hardison's evidence easily meets this flexible standard. She submitted unrebutted testimony that Steve Solomon, a white male employed as the Director of Business Affairs for the defendant school board, "has in fact been responsible for losses to the Defendant . . . but . . . was never placed on administrative leave or constructively discharged for his actions." Solomon's losses "were more egregious than any conduct alleged against Ms. Hardison." Additionally, Hardison provided evidence that Superintendent Skinner had long treated her and Solomon differently. Skinner "often" denied Hardison's requests for additional staff for the Migrant Education Program but granted Solomon's staffing requests. Skinner also interrupted and abruptly ended a professional development meeting that Hardison was leading, implying that such meetings were inappropriate, but never did so to Solomon's meetings.

Yet this undisputed evidence is not enough for the majority. Characterizing Hardison's testimony as "barebones statements," the majority holds that her evidence is insufficient to state a prima facie case. *Supra* at 6. Respectfully, I do not see how this specific and detailed testimony can fairly be called "barebones," especially when evaluated in light of the prima facie case's minimal standard. Hardison identified a specific comparator, his position within the school district, conduct of his that was similar to hers, and supplied additional evidence of a history of differential

No. 20-30643

treatment of the comparator by the defendant. These facts, "if otherwise unexplained," easily give rise to an inference of improper motives on the defendants' part. *Furnco*, 438 U.S. at 577. Even applying the majority's requirement that a comparator have the same supervisor, same job responsibilities, same work violation history, and same alleged misconduct, Hardison's evidence suffices. The summary judgment record shows that Solomon was also under the ultimate supervision of Superintendent Skinner (same supervisor), that Solomon also held a director-level position in the school district (same job responsibilities), that Hardison never had a history of disciplinary infractions, therefore making any disciplinary history of Solomon's comparable in her favor (same work violation history), and that Solomon had caused worse financial losses to the school district but was never disciplined (same alleged misconduct).

The majority finds this last element in particular lacking. It complains that Hardison offered "no details as to Solomon's alleged misconduct" and therefore it cannot tell if he is actually similarly situated enough to permissibly infer discriminatory intent. *Supra* at 6–7. With respect, what additional details does the majority need at this stage? Hardison submitted evidence that Solomon caused larger financial losses to the school district through "budget discrepancies" as the Director of Business Affairs. Interpreting this evidence in the light most favorable to Hardison, as we are bound to at this procedural posture, one can easily infer that Solomon's improper budgeting is similar enough to Hardison's alleged misspending, such that the defendants' decision to discipline Hardison but not Solomon "exude[s] that faint aroma of impropriety[.]" *Thornbrough*, 760 F.2d at 644. Requiring a plaintiff to establish anything more than a mere inference of discrimination at the prima facie stage sets a bar that is "essentially insurmountable" and contrary to our caselaw. *Lee*, 574 F.3d at 260.

\* \* \*

12

No. 20-30643

The real issue with Hardison's case is the one the parties actually dispute: the "ultimate employment decision" requirement that our circuit, and only our circuit, has engrafted onto the plain text of Title VII. It is only because Hardison's evidence does not meet this special Fifth Circuit requirement that I concur in affirming the district court's judgment.

Title VII makes it unlawful "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). As one might expect from the statute's expansive language, "Title VII's prohibition of discriminatory employment practices was intended to be broadly inclusive, proscribing 'not only overt discrimination but also practices that are fair in form, but discriminatory in operation.'" *Washington Cty. v. Gunther*, 452 U.S. 161, 170 (1981) (quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971)). Nonetheless, our court has limited Title VII to apply only to "ultimate employment decisions, such as hiring, granting leave, discharging, promoting, or compensating an employee." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (citation omitted). As is apparent from the statute itself, this judge-crafted limitation has no basis in the plain text or legislative history of Title VII. Our court first discovered it twenty-six years ago in *Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995), adopting dictum from an en banc Fourth Circuit case that involved a different provision of Title VII, *Page v. Bolger*, 645 F.2d 227, 233 (4th Cir. 1981).

Neither *Dollis* nor *Page* based the notion of "ultimate employment decision" in an analysis of the Title VII's text or history, and I question whether the doctrine should continue in our circuit. The Fourth Circuit itself has declined to adopt *Page*'s dictum, *see Von Gunten v. Maryland*, 243 F.3d 858, 866 n.3 (4th Cir. 2001), and the Supreme Court abrogated our insertion of the limitation into Title VII retaliation claims years ago, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). No other court of appeals

13

applies so narrow a concept of an adverse employment action as we do through our "ultimate employment decision" rule. It is hard to square *Dollis*'s restriction of Title VII to "ultimate employment decisions" with the statute's broad prohibition of discrimination in "compensation, terms, *conditions, or privileges of employment*[.]"    42 U.S.C. § 2000e-2(a)(1) (emphasis added). Clearly, "conditions [of employment]" encompass more than simply an employer's ultimate decisions about employment. Though I recognize that Hardison's claim is foreclosed in this circuit by *Dollis*—more specifically by *McCoy*'s extension of *Dollis* to exclude being placed on paid administrative leave indefinitely from Title VII's ambit—I urge our court to reconsider the wisdom of our "ultimate employment decision" rule, and to firmly root our adverse employment action jurisprudence in the text and history of Title VII.